# NOTE:

# THIS IS A PARTIALLY SCANNED DOCUMENT.

# PLEASE SEE THE CASE FILE FOR ATTACHMENTS, EXHIBITS, AFFIDAVITS OR OTHER MATERIAL WHICH HAS NOT BEEN SCANNED.

RECEIVED
STATESVILLE, NC
NOV 4 2004
Clerk, U. S. Dist. Court
W. Dist of N. C.

FORM TO BE USED IN FILING COMPLAINT
UNDER THE CIVIL RIGHTS ACT, 42 U.S.C. 1983

FILED
STATESVILLE
2004 NOV -4 PM 1:49
W. DIST. OF N.C.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
5:04CV182 - 1-MU DIVISION
Statesville

Dexter Lamont Sinkel

(Enter the full name and address of the plaintiff or plaintiffs)

vs.

Case No. 5:04CV182-1-MU
(Leave this space blank)

Paula Smith, Reggie Weisner, Whitaker, Matt Clark, Adams, Valerie Caswell, Bell, Hattie Pimpong and Mitch Johnson

Enter the full name and address of the defendant or defendants.)

I. Have you begun other lawsuits in state or federal court dealing with the same facts involved in this action: Yes ______ No ✓

If your answer is "Yes", describe each such lawsuit in the space below ( or on additional sheets if necessary):

Who was/were the plaintiff(s) in the previous lawsuit(s)?

Who was/were the defendant(s) in the previous lawsuit?

In what court was the suit brought? (If in federal court, name the district; if in state court, name the county)

Date the lawsuit was filed:____________________

Docket number assigned (if known):____________________

How did the lawsuit end? (For example, was it dismissed? Was it tried? Was it appealed? Is it still pending?)

____________________

____________________

____________________

II. Place of present confinement:____________________

____________________

____________________

(Give name and address of place of confinement.)

III. Give name and address of person to contact should your address change:__________

____________________

____________________

IV. Parties:

(In item A below place your name and address first. List the names, Registration/ID number and addresses of any other plaintiffs.)

Name of Plaintiff: Dorter Camont Simel
Present mailing address: ____________________

Name of additional Plaintiff: ____________________
Present mailing address: ____________________

(In item B below place the full name of the defendant, his official position and his place of employment in the first blank. List the names, official positions and places of employment of any other defendants in the remaining space.)

B. Name of first defendant: Paula Smith
Present mailing address: 831 W Morgan St
4278 Mail Service Center
Raleigh NC 27699

Is Employed As Medical Director at North Carolina Dept of Prisons
(Position and Title, if any) (Organization)

Name of second defendant: Reggie Weisner
Present mailing address: P O Box 909
Taylorsville NC 28681

Is Employed As Superintendent at Alexander Correctional
(Position and Title, if any) (Organization)

Name of third defendant: Mr. Whitaker
Present mailing address: P.O Box 909
Taylorsville NC 28681

Is Employed As Assist. Superintendent at Alexander Correctional
(Position and Title, if any) (Organization)

Name of fourth defendant: Matt Clark
Present mailing address: P.O Box 909
Taylorsville NC 28681

Is Employed As Unit Manager at Alexander Correctional
(Position and Title, if any) (Organization)

Name of fifth defendant: Ms. Allman
Present mailing address: P.O Box 909
Taylorsville NC 28681

Is Employed As Assist Unit Manager at Alexander Correctional
(Position and Title, if any) (Organization)

(Insert an additional page, if necessary, listing the same information on any additional defendants.)

Mr. Bell
P.O Box 909
Taylorsville NC 28681

Unit Sergeant at Alexander Correctional

Valerie Carswell
P.O Box 909
Taylorsville NC 28681

Psychologist at Alexander Correctional

Hattie Pimpong
831 W Morgan St
Raleigh NC 27699

Chief Disciplinary Hearing Officer at North Carolina Dept of Prisons

Mitch Johnson
P.O Box 909
Taylorsville N.C 28681

Disciplinary Hearing Officer at Alexander Correctional

V. Statement of claim

State here BRIEFLY the FACTS of your case. Tell what each defendant did. Also, include dates, places and the names of other persons involved. If you intend to allege a number of related claims, number and set forth each claim in a SEPARATE PARAGRAPH. Use as much space as you need. Attach extra sheets if necessary.

See Attached Compliant

# IN FORMA PAUPERIS AFFIDAVIT

I, Dontez Samuel, attest under penalty of perjury that I am the plaintiff in the above-entitled case; that I am a pauper and because of my poverty I am unable to pay the costs or to give security to prosecute this action.

I further attest under penalty of perjury that the responses which I have made to the questions and instructions below are true.

1. Are you presently employed? Yes [ ] No [✓]
   a. If the answer is "Yes", state the amount of your salary or wages per month, and give the name and address of your employer.

   ______________________________

   b. If the answer is "No", state the date of last employment and the amount of the salary and wages per month which you received.

   unknown

2. Have you received within the past twelve months any money from any of the following sources?

| | | | |
|---|---|---|---|
| a. | Business, profession or form of self-employment? | Yes [ ] | No [ ] |
| b. | Rent payments, interest or dividends? | Yes [ ] | No [ ] |
| c. | Pensions, annuities or life insurance payments? | Yes [ ] | No [ ] |
| d. | Gifts or inheritances? | Yes [✓] | No [ ] |
| e. | Any other sources? | Yes [ ] | No [ ] |

If the answer to any of the above is "Yes", describe each source of money and state the amount received from each during the past twelve months:

Mom $2.00 $2.00 $2.00 $2.00 $25.00

3. Do you own cash, or do you have money in a checking or savings account? (Include any funds in prison accounts.) Yes [ ] No [✓]

If the answer is "Yes", state the total value of the items owned:

______________________________

4. Do you own any real estate, stocks, bonds, notes, automobiles, or other valuable property (excluding ordinary household furnishings and clothing)? Yes [ ] No [✓]

If the answer is "Yes", describe the property and state its approximate value:

5. Do you have any debts or loans outstanding? Yes [✓] No [ ]

If the answer is "Yes", list to whom debts are owned, the amount of the debt, and the amount of any payments currently due: District Court for court fees

See records

6. List the persons who are dependent upon you for support, state your relationship to those person, and indicate how much you contribute toward their support:

7. Attach a CERTIFIED copy of your trust account statement for the past six (6) months.

I declare UNDER PENALTY OF PERJURY that the foregoing is true and correct.

I understand that a false statement or answer to any questions in this affidavit will subject me to penalties for perjury.

Dontez Samuel

Plaintiff/Petitioner's signature
(Required as to each plaintiff/petitioner)

NORTH CAROLINA DEPARTMENT OF CORRECTION
TRUST FUND ACCOUNT STATEMENT
FACILITY: 4870 - ALEXANDER C.I.
FOR: 04/15/04 - 10/15/04



ACCT. NAME: SIMUEL, DONTEZ
BED: MPODG004

ACCT#: 0371512
TYPE: INMATE

ENDING BALANCE 10/15/04 $ 0.00 INCLUDES CANTEEN LIMIT OF $ 0.00

| DATE | BATCH NBR. | TYPE | REFERENCE NUMBER | FACL | +/- | AMOUNT | BALANCE |
|---|---|---|---|---|---|---|---|
| 10/01/04 | 019 | CASHLS CANTEEN-I | 00107 | 4870 | - | $ 0.05 | $ 0.00 |
| 09/24/04 | 012 | CASHLS CANTEEN-I | 00221 | 4870 | - | $ 1.95 | $ 0.05 |
| 09/23/04 | 051 | COPAY WITHDRAWAL | 0227041445I | 4870 | - | $ 0.05 | $ 2.00 |
| 09/23/04 | 042 | MONEY ORDER DEP. | 07384785480 | 4870 | + | $ 2.00 | $ 2.05 |
| 09/03/04 | 010 | CASHLS CANTEEN-I | 00136 | 4870 | - | $ 1.95 | $ 0.05 |
| 09/01/04 | 045 | MONEY ORDER DEP. | 07062696966 | 4870 | + | $ 2.00 | $ 2.00 |
| 08/20/04 | 006 | CASHLS CANTEEN-I | 00136 | 4870 | - | $ 0.15 | $ 0.00 |
| 08/13/04 | 017 | CASHLS CANTEEN-I | 00222 | 4870 | - | $ 1.85 | $ 0.15 |
| 08/12/04 | 074 | MONEY ORDER DEP. | 07060985583 | 4870 | + | $ 2.00 | $ 2.00 |
| 07/23/04 | 024 | CASHLS CANTEEN-I | 00178 | 4870 | - | $ 0.10 | $ 0.00 |
| 07/19/04 | 021 | CASHLS CANTEEN-I | 00278 | 4870 | - | $ 0.05 | $ 0.10 |
| 07/14/04 | 015 | CASHLS CANTEEN-I | 00049 | 4870 | - | $ 1.85 | $ 0.15 |
| 07/13/04 | 046 | MONEY ORDER DEP. | 216298457 | 4870 | + | $ 2.00 | $ 2.00 |
| 07/12/04 | 008 | CASHLS CANTEEN-I | 00057 | 4870 | - | $ 0.04 | $ 0.00 |
| 07/02/04 | 005 | CASHLS CANTEEN-I | 00012 | 4870 | - | $ 0.74 | $ 0.04 |
| 06/28/04 | 018 | CASHLS CANTEEN-I | 00039 | 4870 | - | $ 1.12 | $ 0.78 |
| 06/25/04 | 005 | CASHLS CANTEEN-I | 00025 | 4870 | - | $ 0.10 | $ 1.90 |
| 06/23/04 | 042 | MONEY ORDER DEP. | 214122751 | 4870 | + | $ 2.00 | $ 2.00 |
| 06/02/04 | 031 | TRANSFER IN | | 4870 | + | $ 0.00 | $ 0.00 |
| 06/02/04 | 008 | TRANSFER OUT | | 3310 | - | $ 0.00 | $ 0.00 |
| 04/30/04 | 009 | TRANSFER IN | | 3310 | + | $ 0.00 | $ 0.00 |
| 04/30/04 | 022 | TRANSFER OUT | | 4860 | - | $ 0.00 | $ 0.00 |
| 04/15/04 | 097 | WEEKLY DRAW | 486001541 | 4860 | - | $ 2.00 | $ 0.00 |

BEGINNING BALANCE 04/15/04 $ 2.00

| DEBT DATE | DEBT TIME | TYPE OF DEBT | AMOUNT OF DEBT | AMOUNT STILL OWED |
|---|---|---|---|---|
| 09/12/02 | 11:20 | FILING FEES-CASE#5:02-CT-636-H | $ 150.00 | $ 80.00 |
| 11/20/02 | 09:52 | FILING FEES-CASE#02-7668-CA-02-636-5-H | $ 105.00 | $ 30.79 |
| 05/21/03 | 09:31 | FILING FEES-CASE#5:03-CT-350-F3 | $ 150.00 | $ 132.92 |
| 07/28/03 | 08:14 | FILING FEES-CASE#5:03-CT-557-F3 | $ 150.00 | $ 146.00 |
| 01/12/04 | 10:08 | FILING FEES-CASE#03-7833-CA-03-557-5-F | $ 255.00 | $ 252.69 |
| 02/27/04 | 14:45 | DENTAL -HYGIENE/INMATE INIT | $ 3.00 | $ 0.76 |
| 03/09/04 | 08:15 | MEDICAL -SICK CALL WITH NURSE | $ 3.00 | $ 3.00 |
| 05/17/04 | 12:49 | ADM FEE -CASE#4/30/0400:151A99 | $ 10.00 | $ 10.00 |
| 06/04/04 | 07:40 | MEDICAL -SICK CALL WITH NURSE | $ 3.00 | $ 3.00 |
| 06/15/04 | 09:53 | ADM FEE -CASE#6/02/0415:101C02 | $ 10.00 | $ 10.00 |
| 06/15/04 | 11:14 | ADM FEE -CASE#6/02/0422:002B03 | $ 10.00 | $ 10.00 |
| 06/15/04 | 12:04 | ADM FEE -CASE#6/03/0400:402C99 | $ 10.00 | $ 10.00 |
| 06/20/04 | 12:30 | MEDICAL -INMATE DECLARED EMER | $ 5.00 | $ 5.00 |
| 06/28/04 | 09:10 | MEDICAL -SICK CALL WITH NURSE | $ 3.00 | $ 3.00 |
| 06/30/04 | 12:00 | ADM FEE -CASE#6/04/0411:202C02 | $ 10.00 | $ 10.00 |
| 06/30/04 | 12:04 | ADM FEE -CASE#6/07/0402:071C02 | $ 10.00 | $ 10.00 |
| 07/07/04 | 20:30 | MEDICAL -SICK CALL WITH NURSE | $ 3.00 | $ 3.00 |
| 08/06/04 | 12:25 | MEDICAL -SICK CALL WITH NURSE | $ 3.00 | $ 3.00 |
| 08/16/04 | 15:40 | MEDICAL -SICK CALL WITH NURSE | $ 3.00 | $ 3.00 |

ACCT. NAME: SIMUEL, DONTEZ
BED: MPODG004

ACCT#: 0371512
TYPE: INMATE

| DEBT DATE | DEBT TIME | TYPE OF DEBT | | AMOUNT OF DEBT | AMOUNT STILL OWED |
|---|---|---|---|---|---|
| 08/20/04 | 11:15 | MEDICAL | -SICK CALL WITH NURSE | $ 3.00 | $ 3.00 |
| 10/04/04 | 21:00 | MEDICAL | -SICK CALL WITH NURSE | $ 3.00 | $ 3.00 |

Jurisdiction

1. The court has jurisdiction over the plaintiff's claims of violation of federal constitutional rights under 42 U.S.C. § 1331 and 1343

In The United States District Court
for the Western District of North Carolina

Samuel v Smith et al

Complaint

Jury Trial Demanded

Preliminary Statement

This is a civil right's action filed by Dontae Samuel, a state prisoner on behalf of himself and other prisoners at AXCI segregation unit for damages and injunctive relief under 42 U.S.C § 1983 alleging cruel and unusual punishment and denial of an adequate medical and mental health department in violation of the Eight Amendment and denial of equal treatment to AXCI segregation prisoners in violation of the Fourteenth Amendment to the United States Constitution and that the customary policy of AXCI segregation officials using a dog leash to escort prisoners to the shower with is cruel and unusual punishment in violation of the Eigth Amendment to the United States Constitution and confinement in segregation in violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution

Parties

2. The plaintiff, Dexter Sinzel is incarcerated at Alexander Correctional Facility (AXCI) during the events described in this complaint

3. Defendant Bell is a Unit Sergeant at Red Unit Segregation and is a member of the security staff who is primarily responsible for day to day custody and security within the unit. In addition to providing direct supervision, completing performance appraisals, and employee time reports of Correctional Officers on the unit team, the Sergeant assists inmates in resolving day-to-day issues that may arise, providing crisis intervention, investigating disciplinary and administrative remedy issue. He is sued in his individual capacity

4. Defendant Valerie Caswell is a psychologist employed at AXCI and is generally responsible for ensuring the provision of medical care to prisoners. She is sued in her individual capacity

5. Defendant Clark is the Unit Manager of Red Unit Segregation and is the administrator, supervisor, coordinator, and monitor of a team of staff members who are assigned to work in his unit. As a department head, the Unit Manager will be called upon to perform at the unit level the responsibility for overall custody

security and operation of all phases of his unit in regard to both staff and inmates He is sued in his individual capacity

6. Defendant Aiken is the Assistant Unit Manager of Red Unit segregation at AXCI and is responsible for supervising the Sergeants, Officers and Case Managers assigned to the unit team In the absence of or upon designation by the Unit Manger, the Assistant Unit Manger assumes the role of the Unit Manger and has the same decision making authority as the Unit Manger. She is sued in her individual capacity

7. Defendant Weisner is the Superintendent of AXCI and has final authority and responsibility for all matters occuring within the institution He is sued in his official and individual capacities

8. Defendant Whitener is the Assistant Superintendent of AXCI and should have expertise to understand and monitor the units to ensure consistency In addition quality of operations and to make certain that authority and responsibility which have been delegated to the units is effectively managed And responsible for reviewing medical related grievances submitted by prisoners. He is sued in his individual capacity

9. Defendant Paula Smith is the Medical Director of the Department of Corrections and on information and belief respondible for ensuring that all prisons medical and mental health department are adequately to provide care for the serious medical needs of prisoners. She is sued in her official and individual capacities.

10. Defendant Hattie Pimpong is the Chief Disciplinary Hearing officer of the Department of Corrections and respondible for handling administrative disciplinary appeals and correcting constitution violations. She is sued in her official and individual capacities.

11. Defendant Mitch Johnson is the Disciplinary Hearing Officer at Alexander Correctional and respondible for handling disciplinary hearings. He is sued in his individual capacity.

12. All the defendants have acted and continue to act under color of state law at all times relevant to this complaint.

Facts

13. On 2 June 2004, the plaintiff was transferred from Eden Prison outside segregation to AXCI to be placed in general population

14 At Approximately 3:30 pm, the plaintiff arrived to AXCI and by 3:45 pm. Intake prison officials were taking me to be housed in AXCI segregation for Administration segregation (Administration segregation is an Assignment status that temporarily removes an inmate from general population and places them in a single cell on a short term basis to provide control or protection of the inmate pending final classification or disciplinary action)

15 Subsequently, the plaintiff was taken to Red Unit and housed in B-Block segregation cell 13

16 At 5:30 pm, the plaintiff started inquiring prison officials where's my personal property I transferred to this facility with, since it obtains important legal documents to pending legal action thats ongoing in court and obtain my legal books which facilitate me proceeding as a pro-se litigator

17 Officer Williams told me when Intake prison officials bring it. I'll receive it and they're not going to bring it until the property is search.

18 The plaintiff tells Officer Williams that I need to be present why Intake prison officials are searching my personal property since it'll allow me to witness prison officials search it and not read legal document of court papers, damage personal property or lose it

19 Officer Williams states he understand but it's nothing he can do. And I just have to wait until receiving send it. As a result the plaintiff requested to speak with the sergeant

20 It's now 6:00 pm and I have not seen the sergeant I requested earlier and so I started pacing in cell, since I notice 1st shift is leaving and 2nd shift is starting to work

21 Subsequently Officer Bryant enters the block and immediately I asked about my personal property, then explained to him my situation

22 Officer Bryant told the plaintiff I guess Intake prison officials will send it and when they do you'll receive it

23 Afterward, the plaintiff requests to speak with the sergeant and Officer Bryant said alright

24. Next, Officer Bryant asked the plaintiff did I desire to shower and I stated yes So I started preparing for a shower, but; the officer told me when it's my turn they'll come get me.

25 While the plaintiff is waiting his chance to shower "I observed Officer Johnson entered the block and hand Officer Bryant a dog leash that's attached to the handcuffs

26 Then the plaintiff finds out by watching prison officials taking another prisoner that's showering to the shower that is, prison officials use this dog leash attached to a pair of handcuffs to walk a prisoner like a dog to the shower

27 When, I witness this act of prison officials using this dog leash on a prisoner it inflicted serious psychological emotional trauma on me.

28. I couldn't believe AXCI prison officials were using such degrading, barbarous, and inhuman tactics which are similar to the treatment used against Iraq prisoners in Abu Ghraib

29. Immediately, the plaintiff notified prison officials Bryant and Johnson that I refused to shower and then questioned them about who establish the policy of the dog leash

30. And Officer Bryant stated to the plaintiff, the dog leash tactic is policy of AXCI and it's how we operate here.

31. Again I tried to get the Sergeant to see me by requesting it

32. Now, the plaintiff is in a delirious mental state since I'm repeatedly yelling out my dislike of this dog leash and irate at this practice to the point I'm in a rage

33. It's about 8:00 pm and the plaintiff have not seen nobody. So I started kicking the cell door repeatedly for 45 minutes straight.

34 Subsequently, Sergeant Bell visits my cell and inquired why I'm kicking the door

The plaintiff informs the Sergeant I've tried reasonably to find out about my personal property by requesting to see a sergeant but have been denied, therefore, I started kicking the cell door, since it's been 4 to 6 hrs when I arrived to this facility and nobody has brought me my property and I'm concern since my property contains important legal documents which are need for ongoing pending legal litigation in court along with my legal books which facilitate me in proceeding as a pro se litigator

35 Besides, the only thing lower level prison officials continue to tell me, is Intake prison officials will send it, then I'll get it whereas I tell Sergeant Bell this is hard to believe, since Intake prison officials left at 6:00pm

36 Sergeant Bell tells the plaintiff you'll get your property when you get it.

37 Next, the plaintiff questioned Sergeant Bell about the use of the dog leash and was told it's AXCI policy. Welcome to Alexander Correctional

Denial of Eighth Amendment

38 Whereas for now I need for you to submit to handcuffs as a result the plaintiff said why? And Sergeant Bell said for kicking the cell door I have to take your property

39 The plaintiff told Sergeant Bell I have no property and you know it except for a bedroll AXCI prison officials provided, so why you desire to enter my cell

40 Sergeant Bell said I know you don't have any property but I'm still coming in there so I submitted to handcuffs

41 Subsequently Sergeant Bell enters the plaintiff cell and acting as if he's mad because he couldn't take any thing, so he moved me to Cell 11, then removed the handcuffs

42 And told the plaintiff I'm leaving you in this cell

43 The plaintiff asked Sergeant Bell why are you leaving me in this empty cell, which has no mattress, bed linen or toilet paper, since kicking the door doesn't call for this type of punishment

44 Sergeant Bell states to the plaintiff I can do what I want. So then the plaintiff asked Bell for a blanket since the cell is extremely cold with the air condition full blast. Whereas, Bell just walks off

45 Subsequently the plaintiff is left in this cell for approx. 4 1/2 hours with the air condition full blasting without no blanket, mattress, bed linen or anything besides the steel slab to lay on, and a short sleeve t-shirt, thin prison pants and boxer shorts. In which I transferred to this facility with.

46 Which caused the plaintiff to have chill bumps the size of insect bites all over his body and I was shaking uncontrollable

47 Therefore the plaintiff could not take anymore of this corporal punishment and psychological injury resulting from Sergeant Bell punishment. So I completely blanked out and started kicking the cell door

48. Immediately. Sergeant Bell visits the plaintiff cell, inquiring why am I kicking

49. The plaintiff told Sergeant Bell I want to declare an medical emergency. Since I've been in this room for approximately 4 1/2 hours with the air condition full blast, without nothing to adequately keep me warm and I just can't take any more of this type of corporal punishment that I've being subjected to, which have caused me mental anguish and psychological emotional trauma therefore, I need to see a medical doctor

Denial of Medical and Mental health Care

50. Sergeant Bell told the plaintiff I aint getting you no medical personnel and walks away from my cell.

51. Therefore, the plaintiff continue to kick the cell door excessively for 2 hours until Sergeant Bell visits my cell again and inquires me why am I still kicking the door.

52. The plaintiff indicated to Sergeant Bell I've notified you that I need to declare a medical emergency for my mental issues but you're denying me Access to Medical Care

53. Sergeant Bell told me I'm not calling no medical personnel, so then the plaintiff requested to see a mental health personnel

54. Afterward Sergeant Bell asked me why I need to now see a mental health personnel and I told him since I've ask you repeatedly to let me see a medical personnel but you're denying it. So I need to see a mental health personnel

55. As a result, Sergeant Bell asked me what type of mental issue do you have. The plaintiff told him I need to see a mental health personnel about some mental issues I have.

56. Sergeant Bell told the plaintiff you can tell me but again I tell the Sergeant, I need to see a mental health personnel for a mental issue.

57 Nonetheless, Sergeant Bell is being determine that I tell him what mental issue I have, therefore the plaintiff finally told him I couldn't take anymore of the cruel and unusual punishment that prison officials are practicing in segregation and I want to Die. Subsequently, Sergeant Bell leaves the plaintiff's cell

58 On 3 June 2001 at 1:30 am a hour later Sergeant Bell returns to the plaintiff cell with Lt Thrift, the Officer In Charge.

59 Lt. Thrift tells the plaintiff that Sergeant Bell told him Im going to harm myself

60 As a result, Lt Thrift told me he's been ordered by a psychologist to take all my clothes and I'll be only provided a suicide blanket

61 During this time, the plaintiff notice Officer John Doe was holding a camcorder recording the situation

62 Next the OIC had me give him all my clothes, then had me submit to handcuffs, thereafter, I was taken to Cell 9

63 Never at anytime prior to being placed in suicide watch or afterward did any medical or mental health staff visited me.

64 While in the cell with only a suicide blanket and nothing else why the air conditions full blast, the plaintiff is going berserk all night

65 At 6:00 am prison officials started serving breakfast but I'm not hungry since what I've been thru have effected me so deeply I have no appetite.

66 All throu the morning the plaintiff tried to get psychiatric treatment by a mental health personnel but was repeatedly denied. As a result I'm kicking the cell door repeatedly, yelling, cussing, etc.

67 At around 10:30 AM Captain Reed visits the plaintiff's cell and inquires me what's wrong and I'm describing to him the way I've been treated and how prison officials are denying me medical.

68 Captain Reed said I viewed the tape they made of you last night and man you flip out

69 The plaintiff told him what I've been throu back here has just psychological effected me so deeply, that it's traumatize me. And I can't take this cruel and unusual punishment prison official are acting out

70 Captain Reed said just come down and stop kicking the door, then he left

71 Subsequently I hear other prisoners saying the Superindent and Assistant Superintendent are outside the block watching my cell.

12 It's now about 11:30 am since prison officials are serving lunch but, the plantiff still on a hungry strike.

13 Subsequently, the plantiff started kicking his cell door again, asking for adequate medical care but being denied

14 Nobody have visited me from mental health and the only medical staff that have visited the plantiff cell are a register nurse or licensed practical nurse who's distributing medication to other prisoners, which consisted of a glimpse and nothing else. (Medical staff distribute prescrible medicine to certain individual prisoners 3 times a day Therefore they have to visited the block which transpire every 4 to 5 hours but afterward no medical staff are present.)

15 At Around 12:30 pm Captain Jordan visits the plantiff cell And inquires me what's wrong And I explain to her the way Ive been treated and how prison officials are denying me medical And I just cannot deal with the barbarous practices of prison officials at AXCI segregation Therefore I need psychiatric treatment for my current mental illness

16 Captain Jordan tells me to come down and she's going to see if she can get a psychologist to see me, then left

77 Around 2:30 pm Captain Jordan re-visits me and tells me it's no psychiatric treatment or care for me at this facility and tells me it's no psychologist here but a psychologist from another facility is coming to visit me. Witness, Nobody Shows

78 It's now about 5:00 pm since prison officials are serving supper but I'm still not eating

79 At around 7:00 pm Sergeant Hendren visits the plaintiff's cell and informed me that as I've been accused of violating some prison rules

80 Subsequently Sergeant Hendren served Notice to Inmate on the plaintiff And notified me that Sergeant Bell alleged on 2 June 2004 at 10:00 pm I was kicking the cell door and refuse to stop

81 Then inquire me did I desire to write a statement on my behalf. In which I wrote I'm currently on suicide watch and a hunger strike while being compel to write a statement. And also I requested staff assistance

82 Also, Sergeant Hendren informed me that I've been accused of violating another prison rule then stated to plaintiff that Sergeant Bell alleged that on 3 June 2004 at 12:40 am I stated to him I couldn't take it anymore and I wanted to Die.

83 Subsequently Sergeant Hendren served "Notice to Inmate" on the plaintiff, then inquired me did I desire to write a statement in my behalf. In which I write I'm currently on suicide watch and a hunger strike while being compel to write a statement and also requested staff assistance

84 Thereafter, Sergeant Hendren leaves.

85 Pursuant to A.C.D.O.C policy 5ACAC 2B .0204 Disciplinary Procedures. Once a officer has alleged that a prisoner has violated a prison rule, the report is forward to the Officer In Charge who will determine if further investigation is need. If so an investigating officer will be assigned to the case. Then the investigating officer will serve "Notice to Inmate" to the accused and inform the accused of the misconduct report written by

the officer. Afterward a prisoner can write a statement in his behalf, request witnesses etc. Once this is done the investigating officer investigates the facts to determine if the facts allege support the charge. If so a prisoner will be charged and later given the opportunity to plead guilty to a Unit Manager in order to receive lesser punishment or a prisoner can plead not guilty and have case heard in front of a disciplinary hearing officer

86 During the entire night the plaintiff saw no medical or mental health staff

87 On 4 June 2004 at 6:30 am prison officials are serving breakfast but the plaintiff still on a hunger strike

88 Again the plaintiff inquiring for psychiatrist treatment and being denied. Therefore I start kicking the cell door for four hours

89 At approximately 10.30 am Assistant Unit Manager Adams visits my cell and inquires me what's wrong. So I tell her I need some psychiatrist treatment and a psychologist but have been repeatedly denied.

90 Adams told the plaintiff it's no psychiatric treatment available for you at this facility and the psychologist isn't here. Since she's in a meeting in Raleigh and can't see me. I stated to her I need to see somebody and this doesn't make sense; but, Adams said it's nobody that can see you.

91 Nidam left the plaintiff cell and I started kicking the door again.

92 Around 1:30 pm Captain Jordan visits the plaintiff cell again and try to talk with me but its useless and again I tell her I need some mental health treatment

93 Captain Jordan stated a psychologist from another facility is to visit me.

94 The plaintiff told her nobody has seen me yet

95 Jordan tells the plaintiff I'm going to contact somebody in medical and see if somebody can get down here And then asked me, if she get's me some of my property, along with, boxers, t-shirt, mattress and bed linen will I come down

96 I just walked away from cell door

97 Its now about 4:30 pm since prison officals are serving supper but the plaintiff still on a hungry strike.

98 Around 5:30 Officer Hansby tells me Captain Jordan has instructed them to give me a mattress, bed linen, boxer shorts, socks. And also I can have my personal property. Whereas, no mental or mental health staff have visited me.

99 5 to 10 minutes later Officer Hansby brings property

100 Around 6:30 pm the plaintiff used the prisoner grievance procedure available at AXCI notifying them that is, AXCI segregation unit is cruel and unusual punishment Infringing the Eight Amendment to the United States Constitution. And presented the facts relating to this compliant. see attached exhibit A

101 At around 9:45 pm psychologist Valerie Carswell visits the plaintiff cell and asks me thru the cell door "what I want"! Acting hostile and ill tempered.

102 Nonetheless, the plaintiff tells her this segregation has caused me psychological emotional trauma and before I could continue Carswell cut's me off and tells me to deal with it.

103 Then notified me she didn't authorize for me to have my property back and continuing suicide watch level 1. Then walked away.

104 This visit last no more than 1 minute and no questions of what is causing me mental deterioration or nothing is asked by Carswell.

105 At approximately 8:53 pm Sergeant Honeycutt and Officer Bryant takes the property Captain Jordan ordered to be giving back to plaintiff. And again the plaintiff is left with only a suicide blanket as before and nothing else.

106 The plaintiff see nobody and the same is happening as before no type of medical staff have visited.

107 On 5 June 2004 at 6:00 am prison officials are serving breakfast but the plaintiff is still on a hungry strike and refused all meals that day.

108 No medical staff or mental health personnel saw me the entire day, after repeatedly attempts to see someone. But I did observe prison workers supervising my cell here.

109 Around 11:00 am Unit Manager Clark visits the plaintiff's cell and serve him with disciplinary charges for kicking the door, refusing to stop and telling Sergeant Bell I couldn't take it anymore and I want to die based on the above described events.

110 At 9:30 pm Sergeant Honeycutt visits the plaintiff's cell and informs me that as, I've been accused of violating some prison rules.

111 Subsequently Sergeant Honeycutt served "Notice to Inmate" on the plaintiff and notified me that Assistant Unit Manager Nimman alleged on 4 June 2004 at 10:30 am I was kicking the door and she instructed me to calm down and the plaintiff stated I'm not calming f---ing down, f--k you and f--k everybody back here. Along with, I was requesting to see a psychologist.

112 Then inquire me did I desire to write a statement on my behalf in which I wrote I'm currently on suicide watch and a hunger strike while being compelled to write a statement, and also requested staff assistance.

113 Also, Sergeant Honeycutt informed me that as, I've been accused of violating another person rule, then stated to plaintiff that Officer Bryant alleged that on 4 June 2004 at 8:45 pm I was kicking the door and yelling crazy mother — I want my lawbooks, along with threaten to assault staff.

114 Subsequently Sergeant Honeycutt served "Notice to Inmate" on the plaintiff, then inquired me did I desire to write a statement on my behalf. In which I wrote I'm currently on suicide watch and a hunger strike while being compel to write a statement and also I requested staff assistance.

115 Thereafter Sergeant Honeycutt left.

116 All during that day and night no medical or mental health staff have visited me, after repeated attempts to get psychiatric treatment and care. And I'm still in a empty cell with only a steel slab to lay on and just a single blanket to keep me warm against an air condition that full blast.

117 In addition I see prison official supervising the cell in...

118 On 6 June 2004, the plaintiff still not eating while on suicide watch and still I'm unable to receive psychiatric treatment and care. Besides, I'm still in a empty cell with only a steel slab to lay on along with, just a suicide blanket to keep warmth against an air conditions that's full blast

119 In addition, no medical or mental health staff have visited the plaintiff; nonetheless, I notice person official working segregation supervising the cell I'm in

120 It's so cold inside the cell that I had to wrapp toilet paper around my feet to keep them warm.

121 On 7 June 2004, the plaintiff still not eating while on suicide watch and still I'm unable to receive psychiatric treatment and care. Besides, I'm still in a empty cell with only a steel slab to lay on along with, just a suicide blanket to keep warmth against an air conditions that's full blast

122 In addition no medical or mental health staff have visited the plaintiff; nonetheless, I notice person

prison officials working segregation supervising the cell then on

123 At around 2:30 pm Unit Manager Clark visits the plaintiff's cell and served him with disciplinary charges for kicking the cell door disrespect and threatening staff. Based on the accused infraction that prison officials alleged I committed 4 June 2004, to which I plead not guilty

124 At around 8:30 Investigating Officer John Doe visits the plaintiff's cell and informs me, that is. I've been accused of violating some prison rules. Subsequently served "Notice to Inmate" on the plaintiff and notified me that Lt. Dye alleged on 2 June 2004 at approx 3:30 pm I stated to him that I'm a grown man, I don't give a fuck about segregation

125 Then inquired me did I desire to write a statement on my behalf to which I wrote I'm currently on suicide watch and a hunger strike while being compelled to write a statement and also requested staff assistance. After, Investigating Officer John Doe left.

126 During the remainder of the day and night no medical or mental health staff have visited me. Along with, I'm going through the same as before.

127 On 6 June 2001 the plaintiff at breakfast still not eating and the mental anguish and psychological injury he experienced the last 6 days and nights fell below decency or standards and not adequate mental health treatment

128 And by now the plaintiff have been so traumatize by the events in segregation that is, he became to believe this ill treatment by prison officials is the evolving standards of decency that mark the progress of a maturing society

129 It is evident from prison officials response to my mental health needs that they were intentionally disregarding the excessive risk to my health and intentionally failed to provide adequate mental health treatment and care which resulted to the plaintiff suffering unnecessary mental anguish and psychological injury brought about by prison officials deliberate indifference to my serious medical needs

130 At about 9:30am prison officials Officer Church and Hamsby visits the plaintiff cell and informed me I'm scheduled to go to the disciplinary hearing board and what's size clothes do I wear

131 Subsequently I was given clothes to wear and then placed in full waist restraints and leg shackles, in order to be taken to the disciplinary board for the infractions prison officials alleged I committed which happened before being placed on suicide watch and while on suicide watch.

132 Once the plaintiff was taken outside his cell prison officials had to help him walk, since I almost fell as a result to being weak from not eating and it was difficult for me to walk by myself.

133 When we entered the disciplinary hearing room the plaintiff was told by disciplinary hearing officer Mitch Johnson to have a sit. After sitting down Mitch Johnson told the plaintiff "Man you look bad!" "What's wrong with you?"

134 The plaintiff stated to him I'm currently on suicide watch and haven't eaten in the last 6 days.

135 Thereafter, Mitch Johnson informed the plaintiff "well I'm here today to try you on numerous infractions." then explained to me if I plead guilty he'll reduce punishment, whereas I informed him I'm pleading not guilty.

136 Prior to this, the plaintiff notice Sergeant Hendren who investigated some of the alleged infractions against me is present inside the disciplinary hearing room with two other John Doe prison officials.

137 Mitch Johnson stated to plaintiff lets deal with the disciplinary charges for kicking the door and discharging to stop which transpired 2 June 2004 at approx 10:16 pm

138 Then read to the plaintiff Sergeant Bell statement and all other statements pertaining to case, thereafter Mitch told me to explain defense

139 The plaintiff brought to the hearing officer Mitch Johnson attention that I requested staff assistance to assist me, the hearing officer turned up and checked my statement to see if I requested staff assistance, then concluded I did

140 As a result, Mitch asked Sergeant Hendren to be my staff assistance, but, Sergeant Hendren notified Mitch that he investigated this infraction

141 So, the hearing officer Mitch told Sergeant Hinden to call someone to be a staff assistance to me, thereafter a person officer name officer Durham came and then Mitch Johnson told her to act as a staff assistance to plaintiff.

142 After having officer Durham appointed " I say that time informed Mitch Johnson that the plaintiff have not had a chance to talk with staff assistant to prepare defense and obtain information for me, which could assist me with my defense.

143 Mitch, told the plaintiff staff assistance is only to make sure you receive a fair hearing that's it.

144 Afterward, the disciplinary hearing proceeded

145 Subsequently, the plaintiff told disciplinary hearing officer Mitch Johnson that I'm at this present time on a suicide watch and a hunger strike and have been since 2 June 2004 and when this allege act transpired I was in a profound mental disorder.

146 Mitch Johnson stated to the plaintiff "you signed "Notice to Inmate" that you understood the charges etc. The plaintiff informed Mitch that I had to sign my inmate right's and write a statement in my behalf, since if I fail to then prison officials would say I refuse to comply.

147 Besides, again the plaintiff stated to Mitch that I was not in a stable mentality and if any accused infraction were brought against me during this time; however, I had no intention to infringe prison policy and any behavior I acted out resulted from the cause or influence of the mental illness I acquired.

148 Mitch Johnson stated well you had a statement written by Inmate Gabriel Stalling and he said you were kicking the door. Again the plaintiff reiterated what I said in paragraph

149 Next, Mitch Johnson inquired the plaintiff well were you kicking but the plaintiff didnt reply

150 The disciplinary hearing officer Mitch Johnson inquired the plaintiff to step out of the disciplinary hearing room while the plaintiff is outside the disciplinary hearing room I observed Mitch on the telephone and also talking with Sergeant Hendren

151 After about 20 minutes, I was called back into the disciplinary hearing room and Mitch told me he's postponing the hearing and deferring his opinion to all other charges until he get a psychologist opinion and also he havent got time to deal with these infractions now because he has other things to do.

152 Subsequently, the plaintiff was taken back to his cell and once I arrived back I had to give the prison officials back all the clothing they got for me to attended the disciplinary hearing

153 By now its about 11:30 am since prison officials are serving lunch inside the block, but, this time I got a food tray and eat a piece of bread since I see

prison officials are acting arbitrary and care nothing about my physical and mental well being. Therefore, I must make myself eat something since I have to get myself together in order to deal with prison officials on a more competent level

154 At around 2:30 pm The plaintiff is sitting inside his cell when Officer Garcia and Hansby visits and I'm told by them I have to be taken back to the disciplinary hearing room, As a result I was giving clothes then escort again back to the disciplinary hearing room

155 Once I enter, Mitch Johnson informed me that he ordering an re-investigation on all charges pending the psychologist opinion. Thereafter I'm return to cell. And the same has happen as before I'm lefted without nothing inside cell etc.

156 At around 3:30 pm psychologist Valerie Caswell visits the plaintiff cell and asked me am I going to hurt myself.

157 The plaintiff stated no! (Since prison officials were blatantly letting me know that they were indifferent to my serious mental health needs and I couldn't endure any longer being lefted inside a cold cell with the air condition full blast with only a single blanket and nothing else Besides compelled to (lay on a steel slab); therefore, Carswell notified me however, she's authorizing I be given back a mattress, bed linen, boxer shorts, socks, t-shirt and I'm allowed to have my personal belongings

158 Then indicated to me she'll see me later and I'll have a chance to talk with her an leaves. This entire visits last no more than 5 minutes

159 Afterward, prison officials give me my property

160 At around 8:00 pm Sergeant Hendren visits the plaintiff's cell and notify me I've been accused of violating some prison rules

161 Subsequently, Sergeant Hendren served "Notice to Inmate on the plaintiff and notify me that Officer Fox alleged

On 7 June 2004 at 10:18pm I was saying to the psychologist and I said I'm going to piss in her face.

162 Then inquire me did I desire to write a statement on my behalf. In which, I write at the time of this alleged incident I was on a suicide watch and hunger strike. And believe I write that is, I don't even remember it transpiring. Also, I requested staff assistance.

163 Thereafter Sergeant Hendren left.

164 On June 8, 2004 to June 9, 2004 prison official re-served "Notice to Inmate" on the plaintiff for all infractions which transpired while he was suicide watch and also requested that I write another statement pertain to the incidents if I chose to add anything else to the original investigation.

165 In which, I requested several statement from prison officials but I can't specific say what I write

166 On June 10, 2004, I was re-charged with some of the accused infraction, in which I plead not guilty

167 On June 11, 2004, I was re-charged with some of the accused infraction, in which I plead not guilty

168 At or around 2:30 pm, the plaintiff was taken out his cell and escorted to a conference room and when I entered I notice psychologist Carswell sitting at a table

169 After entering Carswell asked the plaintiff now what do you need to talk about that's important. All hostile!

170 The plaintiff started explaining to Carswell that before being transferred to this facility I was housed at Olden Prison outside segregation which conditions were degrading, since it was infested with rats, ant's and unidentifiable insects which crawled on prisoners along with, the insects biting which deprived a person sleep Besides I had to smell chicken excrement odor which suffocated the housing unit all day resulting to an upset stomach regularly and the inability to eat. Which took on them some psychological changes and was very stressful.

171 Then I got to AXCI segregation and prison officials subjected me to intentional emotional and psychological injury to the point I couldn't take it no more.

172 Besides I notified the psychologist that the dog leash practice that AXCI prison officials are using on prisoners have psychological traumatized me and I can't take this mental torture being inflicted on me. Since I'm having bad nightmares about this dog leash and by prison officials subjecting me to this type of humiliation I have no disregard for life.

173 Valerie Caswell tells me, I need to learn how to behave and stay out of segregation. That's the solution I have for you.

174 S. I asked Caswell what you telling me is just because I'm in segregation, prison officials have the right to subject me to cruel and unusual punishment which inflicts mental and psychological injury

175 Caswell said if you stay out of segregation you wont have to be going threw such problems

176 After, seeing Caswell act indifferent to the plaintiff serious mental health needs. I just stop trying to explain the reason I'm in a emotional destress state.

177 Subsequently Caswell tells me it that's it I'll see you This meeting last no more than 5 minutes And since this meeting with psychologist Caswell no follow-up treatment has been rendered.

178 While being housed in AXCI segregation. I've witness several other inmates being treated with segregation as a mean for psychiatric treatment and care. And mental health care

179 Superintendent Wiseman, Assistant superintendent Whitner, Unit Manager Clark, Assistant Unit Manager Mimms and Psychologist Caswell Knew or should know using segregation as a mean for psychiatric treatment and care for suicide tendencies and mental ill prisoners reflects deliberate indifferent to the plaintiff's and other prisoners health in violation of the Eigth Amendment

180 AXCI segregation prisoners who have mental ill problems are deprived the basic components of a Prison Mental Health System reflecting deliberate indifferent

181. Psychiatric treatment and care for AXCI segregation prisoners are unavailable. Since segregation prisoners who have suicide tendencies and mental illnesses who need psychiatric treatment and care are left in their regular segregation cell which is in a regular segregation housing unit around untrained and unqualified prison officials who are unable to provide treatment consistent with contemporary standards of care

182. AXCI segregation prisoners have no separate housing unit for mental ill prisoners and suicide tendencies prisoners

183 Resulting to segregation prison officials filing prison misconduct reports on mental ill prisoners who disruptive behavior is caused or influence by the prisoners mental illness. Causing futher disciplinary segregation punishment and collateral consequences for example. All the infractions prison officials penalized the plaintiff for resulted from behavior caused and influence by the plaintiff mental illness which resulted to months of disciplinary segregation and loss of priveleges and had collateral consequences. Since the infractions prison officials penalize me for while the plaintiff was on suicide watch, were the same infractions prison officials used

Against me to upgrade his custody level to be placed on long term segregation (long term - is an assignment status for inmates who have shown disruptive behavior through disciplinary offenses, assaultive actions or otherwise have been a continuous disruptive influence on the operation of the facility to the extent that additional structure and management by prison authorities are required)

124 And other prisoners with mental illnesses have been treated the same way for example prisoner Michael Lindsey a white male who is known to be a mental ill prisoner have received multiply prison misconduct reports against him for behavior caused and influence by his mental illness. This prisoner eats his own excrement, beats himself, places his head in the toilet and tears his clothes

125 On information and belief Michael came to segregation with no more than 20 days disciplinary segregation time but within 2 months he had been given multiple infractions, which has giving him at least 200 days disciplinary segregation time, and had collateral consequences, since Michael been giving long term

186 On the other hand, the plaintiff and other prisoners have witness prison officials confiscate all his personal belongings, mattress, bed linen, clothes, and then leave him in a extremely cold cell without nothing for weeks at a time, regardless of the man begging prison officials for a blanket since it's cold

187 The reason, the plaintiff and other prisoners with suicide tendencies and mental illnesses are being treated this way and punish for behavior caused or influence by their mental illnesses, since AXCI segregation prisoners have no access to receive psychiatric treatment and care, separate housing block for mentally ill or suicide tendencies prisoners, and trained or qualified person, mental or medical staff to deal with prisoners who have mental ill problems which reflects deliberate indifferent to the serious mental health needs for prisoners

188 Also, the staffing is so deficient that the mental health staff that are present lack the time to do their job

189 On information and belief it's only one psychologist, no psychiatric or other mental health professional for AXCI Segregation Prisoners

Denial of Equal Treatment

190 On information and belief AYCI does have a special housing Unit for mentally ill prisoners whereas the mentally ill prisoners that are housed on that Unit where transferred to this facility for that purposes

191 In addition, in order for a prisoner to be housed on that unit; however a prisoner must meet a certain criteria of a mental ill status.

192 Also what I've been told by prison security that is the special housing unit for these special criteria prisoners have mental health associates regularly working with them and available to them all day and night to attend to their mental health needs

193 Whereas segregation prisoners who acquire mental illness or suicide tendencies have no access to psychiatric treatment and care separate housing unit for them regularly mental health Associate etc

194 Which is unequal treatment to AYCI segregation prisoners infringing the plaintiff and other prisoners equal protection right's

145 Alexander segregation prisoners are deprived the right to a adequate medical department which reflects deliberate indifferent to the serious medical needs of prisoners.

146 Medical staffing is inadequate. Medical services are regularly provided by nurse practitioners, rather than a physician. Nurse practitioners perform without the supervision of a physician and examine patients (prisoners), diagnose illnesses, refer patients to the physician, dispense medication, and treat less serious illnesses even though they are not licensed to do this and are inadequate trained:

For example. On or about 15 June 2004 the plaintiff submitted a sick call in reference to back pains and also requested to see a podiatrist for feet problem. Subsequently 17 June 2004 Register Nurse Peeler visits the plaintiff cell in reference to sick call and notify me through a glass partition that's in the cell door that's she's providing Analgesic Balm Cream and ibuprofen for my back pains and wrote a DC 490 medical notification slip for this medication, along with a DC 490 medical notification slip that I be provided a pair of low cut tennis shoes for feet problem. In which no physical examination, vital signs, blood pressure and temperature conducted. Nor was any physician supervision.

14) On 20 June 2004 the plaintiff declared a medical emergency for medical issues. And Register Nurse Hubbard visits the plaintiff's cell inside and conducted a examination, asked some questions and wrote down notes. During this assessment no vital signs, blood pressure and temperature check etc conducted. Nor was a physician conducting supervision. Whereas, MS Hubbard did come back later and take my vital signs, blood pressure, and temperature. After I said something about it.

198 On June 29, 2004, the plaintiff was evaluated by licensed practical nurse Spicer who conducted the sick call screening why I was outside my cell recreating and inquired isn't this about dry feet but I informed the nurse I filed a sick call for constipation 23 June and haven't seen nurse and declared a medical emergency but was denied by Alston and I need some treatment for it. As a result licensed practice nurse told the plaintiff I'll provided the medication for constipation. Subsequently, I was provided medication

199 On 1 July 2004, Register Nurse Alston visits the plaintiff cell inside for fungus toenail, in reference to the sickcall submitted by me 26 June 2004. This screening lasts no more than 2 minutes and no physician supervision is conducted and no vital signs, blood pressure checks etc conducted. Whereas, Ms Alston informs the plaintiff she'll schedule an appointment for me to see the podiatrist.

2nd On 19 Aug 2004, the plaintiff was evaluated by Register Nurse Peeler who conducted the sick call screening at cell in reference to a sick call submitted by plaintiff about skin fungus and the symptoms of person allergic to soybeans. Officer Magnor was present.

2nd At first Register Nurse Ms Peel tried to take my temperature by placing a thermometer threw a slot that's within the cell door, which is used to pass food, laundry (dirty and clean) and cleaning supplies threw. Whereas, the plaintiff notified her she needs to come inside my cell, because I'm not accepting a temperature check threw the slot like that, since it's unsanitary. As a result Peel notified Officer Magnor that they need to enter cell.

3rd Once Peel entered cell she took my temperature and blood pressure, then glanced at the rash and stated she'll get me some medication for it. And on the other hand Peel was unable to provide any information in reference to the symptoms of being allergic to soy beans. Therefore Officer Magnor trying to make a diagnoses and tell me the symptoms.

203 This presents a prima facie case that unqualified medical staff are regularly rendering medical services to prisoners which reflects deliberate indifference to prisoners serious medical needs

204 Defendants Lensner, Wilson, Smith, Clark have a duty to provide the plaintiff and other prisoners with qualified medical staff and know or should know having unqualified medical staff rendering medical services to prisoners is acting with deliberate indifference to the plaintiff and other prisoners serious medical needs in violation of the Eighth Amendment

205 Access to medical care system is inadequate. Sick call is not conducted on a daily basis, and preliminary procedures at sick call often cause denial or delay of necessary medical care. Access to medical care via the kite system (prisoners send sick call request requesting care) results in preliminary determinations being made without examination of the prisoner. Therefore, often prisoners needing medical care denied access to it. For example

On or about 23 June 2004, the plaintiff submitted 2 sick calls pertaining to dry scalp, constipation and mental health. On 25 June 2004 some Jane Does nurse practitioners had sick call in the block but failed to call me. Therefore I asked the nurses why I'm not being seen and they notified me the next shift were going to see me whereas, the next shift doesn't have sick call. So I declare a medical emergency since I've been constipated for 5 days and as a result I'm having painful headaches and stomach pains. Instead, was told by Sergeant Bell, Register Nurse Alston said she wasn't coming to segregation to see me.

206 At a later date, I was provided medication for the constipation but never received treatment for dry scalp

207 ALCI segregation prisoners receive inadequate medical screening at prisoners individual cells. Regularly sick calls screenings are conducted at prisoners cell with a prison officials present, depriving a prisoner any privacy regarding medical issues and interfere with medical staff adequately performing their job.

208 When sick call screening shouldn't be conducted at prisoners' individual cells since "ALCI Segregation Orientation Policy: Access to Health Care" states that medical staff conducting sick call shall evaluate each inmate's complaint in the medical / mental health rooms located in segregation and treat or refer the case as appropriate. Whereas prison officials and medical staff are doing what's easy.

209 Also periodically sick call's screening are conducted through the glass window partition in a prisoners cell door and when sick call screenings are conducted like this no vital signs, blood pressure checks etc are conducted. Which is not receiving the barest minimum standard of adequate medical treatment.

Denial of Eighth Amendment

2[10] Defendant Wiesner established customary policy mandating AXCI segregation prison officials to use a dog leash attached to the chain links between the handcuffs for the purpose of escorting a prisoner to the shower is cruel and unusual punishment

2[11] Besides, the customary policy of the dog leash serves no legitimate government interest but is used to torture prisoners

2[12] Any AXCI segregation prisoners who desire to take a shower must go threw the following procedurces:
1. Once a prisoner desires to take a shower prison officials (at least two) will visit the prisoner's cell 2. then prison officials will opened the converted trapdoor made within the cell door and 3 while the prison officials are present one is holding the dog leash either in his hand or by wrapping it around his hand while the other official is awaiting to place the handcuffs which are attached to the dog leash on a prisoner Before a prisoner is allowed to shower

213 In order for this to happen a prisoner must walk to his cell door and turn backward, then bend down and stick his arms partially out the trap with his hands turned upward.

214 Subsequently prison officials place the handcuffs on a prisoner, then while holding the prisoner backward with the prison official holding this dog leash, one of the officer's have control to open the prisoners cell door

215 Then the officer instructs the prisoner to turn counter clockwise and walk forward. And while the prisoner is walking forward, one of the prison officials is behind the prisoner holding the dog leash all tight or lose walking a prisoner like a dog.

216 And on numerous occassion prison official have taunted me with saying "Walk boy" "Walk boy" and love to play with dog leash why a prisoner is being walked to the shower.

217 The practice of the dog leash by prison officials is degrading, barbarous and inhuman inflicting serious psychological emotional trauma and mental anguish on prisoners

218 As mention before. when the plaintiff first witness this dog leash practice being used on segregation prisoners it shocked me deeply and the psychological injury I've suffered due to having witness and being subjected to this practice of the dog leash is indescribable

219 Everytime I see a prisoner being subjected to this dog leash practice or having to be subjected to it myself in order to shower, just adds futher psychological injury and mental anguish

220 And it's very difficult for me to sleep and when I am able to sleep. I have horrible nightmares about this dog leash.

221 The psychological emotional trauma this dog leash practice have caused and continue to cause is indelible on me for the remainer of my life

222 I've made several verbal complaints and submitted a grievance about the effects that this dog leash inflicts but prison officials continue to use it and disregard the health hazard this dog leash imposes on prisoners reflecting deliberate indifferent to my and other prisoners' health in violation of the Eighth Amendment to the United States Constitution

223 Since Superintendent Wolsner should know or reasonable know that the dog leash practice imposes a unreasonable risk to a person's physically and mental being, because the mental anguish and psychological injury this dog leash practice causes to prisoners is cruel and unusual punishment but he's disregard that risk by failing to take reasonable measures to abate it

224 On information and belief other prisoners have made complaints about this dog leash practice but prison officials continue to use it.

225 On the other hand, the dog leash practice subjects a prisoner to impending risks of serious damage to a prisoners safety

226 Since the way a prisoner is constrained by this dog leash makes walking difficult, because a prisoner is unbalanced when walking

227 Besides, by a prisoner being unbalance, a prisoner is subjected to impending risks of falling, without no control to prevent a fall or brace for the impact of it.

228 And if, the fall occurs a prisoner will be further injured, because his shoulders will be dislocated by the constrain the dog leash imposes on a prisoners mobility. And it's a probability a prisoner will break his ribs

229 On information and belief no other prisoners in other close custody State Prisons within North Carolina jurisdiction are being subjected to this dog leash practice, which are in similar situations as AXC1 segregation prisoners or are prisoners in higher custody level subjected to the dog leash practice

230 It serves no penological interest to have this dog leash attached to the handcuffs just to escort a prisoner to the shower.

231 Since the same objective can be accomplished with just handcuffing a prisoner behind the back with no dog leash attached.

232 And prison officials know this but they're using the dog leash to torture and degrade prisoners for a form of corporal punishment

233 Prison officials cannot claim this dog leash practice is for security reasons since ALCI segregation prisoners who desire to participate in inside or outside recreation are just handcuffed behind the back without no dog leash attached to it and escort out to the designated recreation area, which is farther in walking distance than the shower inside the block and imposes a more threat than a individual walking in shower shoes to the shower; therefore, it's no reason that can justify this dog leash policy.

234 See supporting declarations attached to back of complaint. Exhibits B, C, D, E

Denial of Due Process

238 On 15 June 2004, at approximately 8:30 am the plaintiff was taken to the disciplinary hearing board for all the infractions incurred before being placed on suicide watch and while on suicide watch in which the disciplinary hearing officer was Mitch Johnson.

238 Subsequently, when the plaintiff entered the disciplinary hearing room, however, he notice that along with the hearing officer was his assistance Officer Rash and other John Does. In addition to Officer Yasmin Cindy who was sitting down on the opposite side from the disciplinary hearing officer etc.

239 After sitting down Mitch Johnson informed the plaintiff that he had alot of infractions and if I plead guilty, the hearing officer would consolidate charges and reduce punishment (Pursuant to the prison disciplinary policy a disciplinary hearing officer before starting a hearing provides an accused prisoner the opportunity to receive a lesser punishment for an accused infraction, if a prisoner decides to plead guilty. Whereas, if a prisoner decides to plead not guilty the hearing will proceed.

238 The plaintiff informed Mitch Johnson that he was pleading not guilty to all the charges.

239 Afterward, Mitch Johnson said well you have numerous infractions therefore we'll start with the one that transpired 2 June 2004 at approx. 3:16 pm. In which person officials alleged you used profanity. (This infraction concerning profanity was the one that initiated the plaintiff being taken to be placed in administration segregation)

240 Nevertheless, before starting this hearing, however, Mitch Johnson informed the plaintiff that Officer Yasmin Cindy would be my staff assistance in which I requested.

241 Immediately, the plaintiff notified Mitch Johnson that this is the first time I've seen Ms Cindy and I haven't had the opportunity to discuss with her these infractions and have not had her to obtain certain information for me, which could assist me in presenting my defense during my due process.

242 Once, the plaintiff explained this to Mitch Johnson however, the hearing officer became upset and told me

that I would not tell him what a staff assistance is for and that a staff assistance is only present to make sure I received a fair disciplinary hearing and my rights aren't infringed.

243 Subsequently Mitch Johnson started explaining to Officer Cindy that she is to only make sure I receive a fair disciplinary hearing and my rights arent infringed. And if she desires, she can take notes

244 The plaintiff then told Officer Cindy I need for her to write down how these disciplinary hearing are being conducted. Whereas, Mitch Johnson stated to Officer Cindy you can take notes if you want to As a result, the plaintiff stops speaking

245 Afterward, Mitch Johnson read the investigation officers statement and all statements in file pertaining to case, then inquired the plaintiff to explain his defense

246 First the plaintiff stated to Mitch Johnson that Due Process of Right had been ~~violated~~

infringed, since prison officials failed to serve "Notice to Inmate within 72 hrs after being placed in Administration segregation

247. Whereas, Mitch Johnson told the plaintiff that time frames doesnt matter, then the plaintiff tried to explain to Mitch that prison officials by law are to serve on me a notice within 72 hrs after placing me in segregation Informing me of the reason prison officials had placed the plaintiff in administration segregation; but, Mitch Johnson blatantly cut me off telling me the infraction wouldnt be dismissed on a time violation

248. Therefore, the plaintiff informed Mitch Johnson that he has a right to be heard; but, Mitch Johnson is depriving that right

249. Subsequently, Mitch Johnson becomes hostile and indicated to me aint no infraction being dismissed for a time violation. During this time it's so much tension between the plaintiff and Mitch Johnson that prison official Officer Rash yells at me to come down or the disciplinary hearing will

be dismiss. As a result I became silent since I'm thinking the disciplinary hearing officer is trying to have an excuse to eject me from the hearing. so I can be found guilty of all the infractions to which would make it impossible for me to establish facts for a disciplinary appeal.

25c Thereafter, the plaintiff was inquired by Mitch Johnson did he commit the alleged accused infraction and the plaintiff stated nothing

25d Disciplinary Hearing Officer Mitch Johnson then said hold on and picked up a telephone inside the room an called the Assistant Superintendent Whitaker inquiring him why the case had occured 6-2-04 and had not been reported to the Unit Manager until 6-7-04; however, Mitch Johnson was told by Assistant Superintendent Whitaker that the Unit Manager was absent from his office and that was the reason for the delay.

25e Afterward, I was ordered to step outside the disciplinary room while Mitch Johnson decided the case

253 Approximately 35 minutes later I was summons back inside the disciplinary hearing room and notified by Mitch Johnson he finds me guilty of the infraction.

254 Disciplinary Hearing Officer Mitch Johnson imposed as punishment 20 days segregation, 30 hours extra duty, suspension of recreation and radio privileges for 60 days and 2 month draw limit based on him finding me guilty of the offense

255 Pursuant to prison procedure, the plaintiff filed an administration appeal with the Director of Prison Boyd Bennett which was determine by Chief Disciplinary Hearing Officer Hattie Pimpong, pointing out that prison officials infringed the plaintiff's due process of right by failing to serve "Notice to Inmate within 72 hours after placing him in administration segregation, along with the disciplinary hearing officer Mitch Johnson presented a lack of impartiality by denying the plaintiff the right to be heard and failure to consider plaintiff defense in good faith and presented a lack of impartiality by calling the Assistant Superintendent and also the disciplinary officer infringed by only providing staff assistance at the start of hearing.

256 Defendant Pingpong denied the plaintiff's appeal.

257 Next, Mitch Johnson stated to plaintiff let's deal with the infraction that transpired 2 June 2004 at approx 11:00 pm. In which Sergeant Bell alleged I was kicking the cell door and refuse to stop

258 Subsequently, Mitch Johnson read the investigating officer's statement and all statements in file pertaining to case, then inquired the plaintiff to explain his defense

259 The plaintiff explained to the disciplinary hearing officer that he was in a mental emotional disorder at the time of this incident and really couldn't remember the incident. But Mitch Johnson said you signed the "Notice to Inmate"; however, the plaintiff told Mitch that I had no choice, since if I had failed to comply with the disciplinary procedures, then prison officials would have said I refused to comply

260 Next, Mitch Johnson said well you requested a statement from inmate Gabriel Stallings and he said you were kicking the door.

266 Then Mitch Johnson inquired the plaintiff was he kicking the cell door and the plaintiff notified the disciplinary hearing officer that if I committed any prison violation during the time I acquired a mental disorder, however, it wasn't intentional and committed by a person in a stable and [illegible]

267 Mitch Johnson stated to the plaintiff also you requested a statement from Valerie Carswell Psychologist II and the plaintiff stated to Mitch that the reason I requested a statement from Valerie since at the beginning of the investigation for this infraction and all others didn't no prison officials mention in their statements that I was on suicide watch when these incidents transpired and I had to request one from the psychologist to corroborate my story. Then Mitch Johnson said she stated you were placed on suicide precautions June 5 2001 at 1:30 pm and I was follow by Mental Health staff in accordance to policy. Besides my current mental health issues and status didn't impede me from following prison rules from a mental health standpoint and stated I can be held responsible for my actions and accountable

268 The plaintiff indicated to Mitch Johnson that Valerie Carswell

didn't see me on this day therefore she wrong to make such statement about my mental illness and also by law I can't be punish for behavior caused or influence by my mental illness and I(?) ruller(?) provided the case law in this support but I'll admit it was the wrong case

264 Afterward. I was ordered to step outside the disciplinary room, while Mitch Johnson decided the case.

265 Approximately 45 minutes later I was summons back inside the disciplinary hearing room. And notified by Mitch Johnson he finds me guilty of the infraction.

266 Disciplinary Hearing Officer Mitch Johnson imposed as punishment for kicking the door 20 days segregation, 40 hours extra duty, suspension of visitation and telephone privileges for 120 days. and 4 month draw limit. Along with for refusing to stop kicking the door 10 days segregation, 30 hours extra duties, suspension of canteen and radio privileges for 60 day which is suspend 6 months and 2 month draw limit which suspend 6 months

267 Pursuant to prison procedure, the plaintiff filed an administration appeal with the Director of Prison, Boyd Bennett with was determine by Chief Disciplinary Hearing Officer Hattie Pimpong, pointing out that Mitch Johnson infringed the plaintiff's due process by presenting a lack of impartiality since this infraction the plaintiff was found guilty on, was the same infraction that the

disciplinary hearing officer Mitch Johnson held in 8 June 2004. In which the plaintiff plead not guilty, then Mitch Johnson read the investigating officer statement and other statements pertaining to case. Subsequently, the plaintiff presented his defense, which was not consider in good faith by Mitch Johnson since once the plaintiff presented his defense, however, Mitch Johnson deliberated on the plaintiff fate But instead of Mitch Johnson deciding the plaintiff's fate, he order a re-investigation. Therefore, the plaintiff argued on appeal that Mitch prejudice the evidence and presented a lack of impartiality. And the plaintiff should not have been retried for this same infraction. Besides the disciplinary hearing officer presented a lack of impartiality by his actions throu the disciplinary hearing and infringed by providing staff assistance just at the beginning of hearing

264 Defendant Pimpong denied the plaintiff's appeal.

289 Next Mitch Johnson stated to the plaintiff let's deal with the infraction that transpired 6-3-04 at Approx 12:40 a.m. In which Sergeant Bell alleged the plaintiff stated "he couldn't take it anymore. I want to die.

290 Subsequently, Mitch Johnson read the officers statement and All statements in file pertaining to case. then inquired the plaintiff to explain his defense

291 The plaintiff explained to the disciplinary hearing officer that after repeatedly attempts to be seen by medical, by requesting it to Sergeant Bell about a mental illness I acquired however I was denied by him And after the Sergeant Bell insisted I tell him what type of mental issue I had the plaintiff told him. In which result to Sergeant Accusing me of A prison violation whereas, told Mitch Johnson that if Sergeant Bell would have done his job Appropriately I wouldn't been Accused of An infraction since A prisoner And A medical personnel has A privilege of Confidentiality when discussing medical issues And A medical personnel wouldn't have penalize me for seeking medical treatment And what Sergeant Bell did was entrapment.

273 Mitch Johnson stated to the plaintiff that apparently you said it, since you were placed on suicide watch

273 Again, the plaintiff stated to Mitch that if Sergeant Bell would have done his job appropriately and not denied me access to medical. I wouldn't had this infraction since no medical staff would have penalize me for seeking treatment for a mental issue.

274 Mitch Johnson said is that it and I stated yes

275 Subsequently, I was ordered to step outside the disciplinary room, while Mitch Johnson decided the case.

276 Approximately 45 minutes later I was summon back inside the disciplinary hearing room and notified by Mitch Johnson he finds me guilty of the infraction

277 Disciplinary Hearing Officer Mitch Johnson imposed as punishment for threatening to harm myself 20 days segregation suspended 6 months, 30 hours extra duty suspended 6 months, suspension of telephone and visitation privileges for 60 day suspended 6 months and 2 months draw limit suspended 6 months

278 Prison officials penalizing the plaintiff for seeking medical treatment for a mental illness he acquired presents a prima facie case that AXCI prison officials are untrained to deal with mental health issues and haven't been adequately train to deal with serious medical needs of prisoners reflecting deliberate indifference

279 Pursuant to prison procedure, the plaintiff filed an Administrative Appeal with the Director of Prison, Boyd Bennett which was determine by Chief Disciplinary Hearing Officer Hattie Pinpong, pointing out that Mitch Johnson infringed the plaintiff's due process by failing to take in good faith the plaintiff defense. only providing staff assistance at the beginning of hearing. (The plaintiff cannot remember what else arguments he raised on appeal and have made numerous attempts by writing Hattie Pinpong trying to find out, since at the time of appealing these disciplinary convictions prison official weren't provide carbon paper therefore I was unable to copy my appeals. But Hattie Pinpong has intentionally failed to provided copies. After it's been brought to her attention the information sought is for Access to Court)

280 Defendant Pinpong denied the plaintiff's appeal.

287 Next Mitch Johnson stated to the plaintiff let's deal with the infraction that transpired 4 June 2001 at Approx 10:30 am In which Assistant Unit Manager Ruman alleged the plaintiff was kicking the cell door and disrespect

288 Subsequently, Mitch Johnson read the officers statement and all statements in file pertaining to case, then inquired the plaintiff to explain his defense.

289 The plaintiff notified Mitch Johnson that at the time of this allege act I was on suicide watch and a hunger strike and couldn't remember the incident. And as a result to the plaintiff mental illness he acquired at the time of this allege act, however I cannot be punish for behavior caused by my mental illness.

290 Mitch Johnson said well did you do it? However, the plaintiff told the disciplinary hearing officer that I couldn't remember this incident and if I commit any prison violation during the time I acquired a mental disorder, nonetheless, it wasn't intentional and committed by a person in a stable mind frame.

285 Mitch stated to the plaintiff well you requested a statement from Valerie Carswell Psychologist II. And the plaintiff stated to Mitch Johnson that the reason I requested a statement from Valerie, since at the beginning of the investigation for this infraction and other didn't no prison officials mention in their statements that I was on suicide watch when these incidents transpired and I had to request one from the psychologist to corroborate my story.

286 Then Mitch stated well Valerie Carswell wrote a statement saying from a mental health standpoint I'm responsible for my actions and can be held accountable

287 Immediately, the plaintiff indicated to Mitch Johnson that Valerie Carswell didn't see me at this time therefore she wrong to make such statement about my mental illness and by law I can't be punish for behavior caused or influence by my mental illness.

288 Mitch stated to plaintiff if that's it, step outside the disciplinary room

289 While the plaintiff is awaiting the Mitch decision I observe the hearing officer get on the telephone, then a minute later I witness Assistant Unit Manager Mann entered the disciplinary hearing room. (This is the same woman who wrote the misconduct against plaintiff.) In which Mitch Johnson was deliberating on. 5 minutes later Assistant Unit Manager Mann exits the disciplinary room, then Mitch summons the plaintiff back in. And informed me that I'm being found not guilty for kicking the door, since Mann said she didnt see me kicking the door but was finding me guilty for disrespect

290 Disciplinary Hearing Officer Mitch Johnson imposed as punishment for disrespect, 20 days segregation, 30 hours extra duty, suspension of visitation and recreation privileges for 60 days. And 2 month diet loaf

29. Pursuant to prison procedures, the plaintiff filed an Administration Appeal with the Director of Prison Boyd Bennett which was determine by Chief Disciplinary Hearing Officer Hattie Pimpong, pointing out that Mitch Johnson infringed the plaintiff's due process by presenting a lack of impartiality by summoning the prison official who wrote the infraction against plaintiff inside the disciplinary hearing during the time Mitch was deliberating the plaintiff fate, also by him (Mitch) failing to take into consider plaintiff defense in good faith, by Mitch Johnson only providing staff assistance at beginning of disciplinary hearing. And failing to provide an meaningful explanation of why he found plaintiff guilty of the offense

29. Defendant Pimpong granted this appeal by reducing the punishment But have intentionally ignored the plaintiff attempts to find out on what grounds was the appeal granted these answers written letters address to her Since it's still on the prison computer that the original punishment hasn't been change And also the plaintiff has tried to find out what was reduced Because All the plaintiff's appeal were identical in argument, therefore I was trying to figure out how could Pimpong Grant some appeals and deny others.

293 Next Mitch Johnson stated to the plaintiff let's deal with the infraction that transpired 7 June 2004 at Approx. 10:00pm In which Officer Fox alleged the plaintiff stated "... that Bit I'm going to piss in her mother — face" referring to Psychologist III Valerie Carswell

294 Subsequently, Mitch Johnson read the officer's statement and all statements in file pertaining to case, then inquired the plaintiff to explain his defense

295 The plaintiff notified Mitch Johnson that at the time of this allege act I was on suicide watch and a hunger strike and I couldn't remember the incident and as a result to the plaintiff mental illness he acquired at the time of this allege act; however, I cannot be punish for behavior caused by my mental illness

296 Mitch Johnson said well did you do it? However, the plaintiff told the disciplinary hearing officer that I couldn't remember this incident and if I committed any prison violation during the time I acquired a mental disorder; nonetheless, it wasn't intentional and committed by a person in a stable mind frame

297 Mitch stated to the plaintiff well you requested a statement from Valerie Caswell Psychologist II. And the plaintiff stated to Mitch Johnson that the reason I requested a statement from Valerie, since at the beginning of the investigation for this infraction And others didn't no person officials mention in their statements that I was on suicide watch when these incidents transpired And I had to request one from the psychologist to corroborate my story.

298 Then Mitch stated well Valerie Caswell wrote a statement saying from a mental health standpoint I'm responsible for my Actions and can be held accountable

299 Immediately, the plaintiff indicated to Mitch Johnson that Valerie Caswell didn't see me at this time therefore she wrong to make such statement about my mental illness and by law I can't be punish for behavior caused or influence by my mental illness.

300 Mitch stated to the plaintiff if that's it, step outside the the disciplinary room. Approximately 45 minutes later I was summon back inside the disciplinary hearing room and notified by Mitch Johnson he finds me guilty of the infraction.

30 Disciplinary Hearing Officer Mitch Johnson imposed as punishment for profanity 20 days segregation, 30 hours extra duty, suspension of telephone and canteen privileges 60 days and 2 months drawn limited. Along with the threatening 20 days segregation. 30 hours extra duty, suspension of visitation and radio 60 days, and 2 months drawn limit

31 Pursuant to prison procedure, the plaintiff filed an administrative appeal with the Director of Prison Boyd Bennett which was determine by Chief Disciplinary Hearing Officer Hattie Pimpong, pointing out that Mitch Johnson infringed the plaintiff's due process by presenting a lack of impartiality, by the failure to consider the plaintiff mental condition, by only providing staff assistance at the beginning of hearing, and by the disciplinary hearing officer failure to provide a meaningful explanation of finding of guilt

32 Defendant Pimpong granted this appeal by modifying the punishment. But have intentionally ignored the plaintiff attempts to find out on what grounds was the appeal granted these numerous written letters address to her. Since its still on the prison computer that the original punishment hasn't been change. And also the plaintiff has tried to find out what was modified

304 Next, Mitch Johnson stated to the plaintiff let's deal with the infraction that transpired 4 June 2004 at Approx. 6:45 pm In which officer Bryant alleged the plaintiff was kicking his cell door disrupt, and threatening.

305 Subsequently Mitch Johnson read the officers statement and all statements in file pertaining to case, then inquired the plaintiff to explain his defense

306 The plaintiff notified Mitch Johnson that the investigating officer Sergeant Honeycutt was involved in this alleged altercation which allegely result to the infraction therefore according to prison policy Sergeant Honeycutt is prohibit from investigating And I brought this to the investigating officer attention when compelled to write statement Subsequently I ask that the charge be dismissed since prison officials had prejudice the investigation

307 Afterward Mitch Johnson inquired the plaintiff to step outside the desciplinary room And while the plaintiff outside the room I witness Mitch Johnson call someone on the telephone, then I heard him explaining the situation Afterward I was summons back inside

308 Once inside Hutch Johnson told the plaintiff he's ordering a re-investigation. Thereafter, the plaintiff left the disciplinary room.

309 On the 16 or 17 June 2004. An investigating officer served me with "Notice to Inmate". And inquired did I desire to write an additional statement In which the plaintiff did but cant remember in depth what I wrote specifically. However, do know I describe how the plaintiff had already been tried for this allege infraction and when I presented my defense and inquired for the charge to be dismissed, the disciplinary hearing officer ordered a re-investigation etc.

310 Also, I submitted a prison confidential grievance to the Director of Prisons about the disciplinary hearing officer Hutch Johnson Arbitrary acts And prison officials infringing my due process In which was rejected since it wasn't consider confidential nature

311 On 22 June 2004. A prison official brought the plaintiff a disciplinary report notifying him the charge was dismissed

312 See supporting documents attached to the back of compliant Exhibits F, G, H, I, J, K In which are the records in summary basicly pertaining to the disciplinary hearing conducted 15 June 2001 by Mitch Johnson And also are the Appeals orders provided by Hattie Pimpong

313 Rules And Policies Governing the Management And Conduct of Inmates Under the Control of the Division of Prisons Inmate Booklet see exhibit L Governing Disciplinary Procedures 5d creates A state created liberty interest for prisoners

314 Since it constrains the discretion of the disciplinary hearing officer when conducting A disciplinary hearing

315 Whereas the plaintiff was blatantly deprived the state created liberty interest establish by the State of North Carolina by Mitch Johnson lack of impartially during the procedures of disciplinary hearing.

316 In which result to the plaintiff been punish with months of punitive segregation and lose of privileges And had colleteral consequences

31) Resulting to the plaintiff being subjected to atypical and significant hardship. Since if the plaintiff would not been deprived the state created liberty interest establish by the State of North Carolina, however I wouldn't have been subjected to these inhuman conditions of A.C.L segregation

Claims for Relief

318 The actions of defendant Bell intentionally denying access to medical care against the plaintiff resulted to the plaintiff suffering needless psychological injury and mental anguish constitute deliberate indifferent to the plaintiff serious medical needs in violation of the Eigth Amendment

319 The actions of defendant Bell in placing the plaintiff in a cell without nothing when the air condition was full blast and the cell was extremely cold for several hours without no justification but for the purpose of corporal punishment resulted to the plaintiff suffering needless psychological injury and mental anguish subjecting him to cruel and unusual punishment in violation of the Eigth Amendment of the United States Constitution

320 The actions of defendant Bell penalizing the plaintiff for seeking medical treatment reflects that prison security have not been adequately trained to deal with medical emergencies constituting deliberate indifferent to the plaintiff serious medical needs infringing the Eigth Amendment of the United States Constitution

321. The failure of defendants Weisner, Smith, Clark, Whitner and Naman to provide an adequate medical and mental health department to AXCI segregation prisoners places prisoners to be subjected to imminent danger toward their safety and health and they know or should know that AXCI segregation prisoners access to an adequate medical and mental health care reflects deliberate indifferent to prisoners health and safety violating the Eighth Amendment of the United States Constitution.

322. The failure of defendants Weisner, Smith, Clark, Whitner and Naman to take measures to provide qualified medical staff to render medical services to plaintiff and other prisoners serious medical needs reflect's deliberate indifferent to inmates health in violation of the Eighth Amendment to the United States Constitution. Since they know or should know that letting unqualified medical staff regularly render medical services reflects deliberate indifferent.

323. The failure of Weisner, Smith, Clark, Whitner and Naman to take measures to provide sufficient medical and mental health staff for the plaintiff and other inmates serious medical needs reflects deliberate indifferent infringing the Eighth Amendment to the United States Constitution.

324 The failure of defendants Weisner, Smith, Clark, Whitner and Aiman to provide an sufficient number of mental health staff to deal with the plaintiff's mental health needs, resulted to the plaintiff suffering needless psychological injury and mental anguish constituting deliberate indifferent in violation of the Eigth Amendment to the United States Constitution.

325 The actions of defendants Smith, Weisner, Whitner, Clark, Aiman and Caswell using regular segregation for the purposes of providing psychiatric treatment and care to mental ill prisoners without out no trained mental health staff to provided treatment or trained prison security officials to provided treatment and not having a separate housing unit for the plaintiff and other inmates who have mental illnesses or suicide tendencies that need adequate treatment reflects deliberate indifferent to inmates mental health needs violating the Eigth Amendment to the United States Constitution. Since they know or should know using regular segregation housing for the purpose of providing psychiatric treatment and care to mental illness prisoners reflect deliberate indifferent to prisoners serious mental health needs.

326 The actions of defendant Caswell in response to the plaintiff serious mental health needs reflected that Caswell took an easier and less efficacious course of treatment which exacerbated the plaintiff mental illness and also resulted to him suffering needless psychological injury and mental anguish constituting deliberate indifferent to plaintiff serious mental health needs violating the Eighth Amendment to the United States Constitution.

327 The failure of defendant Wessner, Whitney, Clark and Mann to train prison security how to respond to emergency dealing with mental ill prisoners constitute deliberate indifferent to the plaintiff's serious medical needs violating the Eighth Amendment to the United States Constitution

328 The actions of defendant Wessner, Whitney, Clark, Mann and Caswell in response to the plaintiff mental health needs blatantly show that they were disregarding the excessive risk to my health and intentionally failed to provide adequate mental health treatment and care constituting the plaintiff suffering unnecessary mental anguish and psychological injury brought about by their deliberate indifferent violating the Eighth Amendment to the United States Constitution.

339 The actions of defendants Smith and Weisner having a special housing mental health unit for special criteria mentally ill prisoners which have mental health associate at hand for the mental health needs but fail to furnish AXCL prisoners in segregation the same violates the plaintiff and other prisoners Equal Protection to the Fourteenth Amendment to the United States Constitution

330 The actions of defendants Lucisano, Whitener, Smith, Clark and Rinaldi using segregation as an alternative to psychiatric treatment and care to AXCI prisoners resulted to the plaintiff receiving inadequate care causing the plaintiff needless psychological injury and mental anguish constitutes deliberate indifference to the plaintiff serious mental health needs violating the Eigth Amendment to the United States Constitution.

331 The actions of defendant Johnson in only providing staff assistance at the beginning of the disciplinary hearing to assist the plaintiff, and lack of impartiality presented at the hearing toward plaintiff by Johnson and failure to take in good faith the plaintiff defense along with providing an inadequate written disposition of the charges denied the plaintiff the due process of law in violation of the Fourteenth Amendment to the United States Constitution.

332 The actions of defendant Pimpany in refusing to overturn the plaintiff's disciplinary convictions, despite her knowledge of the above described due process violations, constitute deliberate indifference and further denied the plaintiff the due process of law in violation of the Fourteenth Amendment to the United States Constitution.

333 The actions of defendant Weisner in establishing a customary policy where prison officials can use a dog leash to escort segregation prisoners to the shower is cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution

334 The failure of defendants Weisner, Whitaer, Clark and Aimes to abandon the use of the dog leash on segregation prisoners when they knew or should know that it subjects prisoners to a substantial health and safety risk constitute deliberate indifference in violation of the Eighth Amendment to the United States Constitution

336 The actions of defendants Wiesner, Whiter, Clark, and Aimes using the dog leash on the plaintiff, when they should know or know it's cruel and unusual and presents a threat to the plaintiff health, but failed to rectify it, resulted to the plaintiff suffering needless psychological injury and mental injury constituting deliberate indifference violating the Eighth Amendment to the United States Constitution.

Relief Requested

Wherefore, plaintiff request that the court grant the following relief

A Issue a declaratory judgment stating

1. The intentionally denying plaintiff Access to Medical Care by defendant Bell violated the plaintiff's right's under the Eigth Amendment to the United States Constitution

2. Defendant Bell actions in placing the plaintiff in a extremely cold cell with the air condition full blast, without a blanket to keep warmth for 4 1/2 hours for the form of corporal punishment violated the plaintiff's right under the Eigth Amendment to the United States Constitution

3. Defendant Bell filing an prison misconduct report on the plaintiff for seeking mental health treatment violated the plaintiff's right's under the Eigth Amendment to the United States Constitution

4. Defendants Smith, Weisner, Whitney, Clark and Armon Actions in failing to provide an adequate mental and medical health department to AXCF segregation prisoners and the plaintiff

violated, and continue to violate, the plaintiff's and other prisoners right under the Eighth Amendment to the United States Constitution

5 Defendants Smith, Whitmer, Wiesner, Clark, and Riann Actions in failing to provide qualified medical staff to render medical services to the plaintiff and other prisoners violates the Eighth Amendment to the United States Constitution

6 Defendants Smith, Wiesner, Whitmer, Clark and Riann Actions in failing to provide a sufficient numbers of qualified staff for mental and medical health services for the plaintiff and other prisoners serious medical needs violates the Eighth Amendment to the United States Constitution

7. The actions of defendants Wiesner, Whitmer, Clark, Smith, Riann and Carswell using regular segregation for the purpose of providing psychiatric treatment and care along with using regular segregation to house mentally ill prisoners into without trained and qualified staff to provided treatment and care violates the plaintiff's and other prisoners right under the Eighth Amendment to the United States Constitution.

8. Defendants Smith, Weisner, Whitner, Clark and Rimann Actions in failing to train security officials how to respond to emergencies dealing with mental ill prisoners violated the plaintiff's rights under the Eight Amendment to the United States Constitution.

9. Defendants Weisner, Whitner, Clark and Rimann failure to abandoned using the dog leash on prisoners violate and continue to violate the plaintiff and other prisoners right's under the Eigth Amendment to the United States Constitution

10 Defendants Weisner, Whitner, Clark and Rimann Actions in failing to abandon the practice of the dog leash on prisoners when they know or should know that it subjects prisoners to impending risk to danger toward their health and safety violates and continue to violate the plaintiff and other prisoners right's under the Eigth Amendment to the United States Constitution.

11 The psychological injury and mental anguish cause to plaintiff by defendants Weisner, Whitner, Clark and Rimann as a result to this dog leash practice violated the plaintiff's rights and continue to violate the plaintiff right's under the Eigth Amendment to the United States Constitution

12 Defendants Weisner, Riman failure to correct known constitution violations brought to their action through the prison grievance system violated the plaintiff's rights under the Eighth Amendment to the United States Constitution.

13 Defendants Johnson actions in conducting the plaintiff's disciplinary hearing and defendant Pimpong actions in sustaining it, violated the plaintiff's rights under the Due Process Clause of the Fourteenth Amendment to the United States Constitution

14 Defendants Weisner, Whitner, Smith, Clark, And Riman providing a special housing unit for a certain group of mentally ill prisoners which have accessibility to mental health staff all around the clock but not AXCI segregation prisoners violates the plaintiff's right under the Equal protection Clause of the Fourteenth Amendment to the United States Constitution

~~Defendants Weisner and Smith~~

B. Issue An injunction ordering defendants Werner, Smith, or their Agents to

1. Immediately provide AXCI segregation prisoners with and adequate medical and mental health department

2 Immediately prohibit unqualified medical staff from rendering medical services unless they're perform under a physician supervision

3 Immediately hire a sufficient number of medical and mental health staff which are qualified to rendered medical services

4. Immediately prohibit medical staff from conducting sick call screening in prisoners individual cells

5. Immediately hire a sufficient number of licensed physicians so they can supervise unqualified medical staff rendering medical services to AXCI segregation prisoners along with, provide medical care.

6. Immediately prohibit prison official from using segregation for the purpose of an alternative as providing psychiatric treatment and care.

7. Immediately arrange that prison officials provide AXCI segregation prisoners with access to psychiatric treatment and care

8. Immediately prohibited prison officials from keeping suicide tendencies and mentally ill prisoners housed in their regular cells which are around mentally healthy prisoners and also without any qualified or trained medical and security staff who can provide treatment.

9. Immediately order AXCI segregation prison officials to provide a separate housing block for mentally ill prisoners and suicide tendencies prisoners who need mental health treatment

10. Immediately train prison security officials how to deal with emergencies dealing with mental ill and suicide tendency prisoners

11. Immediately order AXCI segregation prison official from using a dog leash to escort prisoners to the shower with

C. Issue an injunction ordering defendant Pinpong to:

1. Release the plaintiff from punitive segregation and place him in general population with restoration of all rights and privileges.

2. Expunge the disciplinary convictions described in this complaint from the plaintiff's institutional record

D Award compensatory damages jointly and severally against

1. Defendant Bell for the physical and emotional injuries sustained as a result of subjecting the plaintiff to cruel and unusual punishment

2 Defendant Wesner, Whitaker, Clark, Smith and Nixon for the physical and emotional injury sustained as a result of their failure to provide an adequate medical and mental health department

3 Defendant Carswell for the physical and emotional injury sustained as a result of her failure to provided adequate treatment to plaintiff

4. Defendants Wisner, Whitner, Clark and Aiman for the physical and emotional injury resulting from the use of a dog leash on prisoners subjecting the plaintiff to cruel and unusual punishment

5. Defendant Pimpong and Johnson for the punishment and emotional injury resulting from their denial of due process in connection with the plaintiff's disciplinary proceedings.

E Award punitive damages against Smith, Wisner, Whitner, Clark Aiman, Carswell, Pimpong and Johnson.

F Grant such other relief as it may appear that plaintiff is entitled.

2 Nov 2004

Respectfully submitted

Dontez Lamont Samuel
Alexander Correctional
P.O Box 909
Taylorsville NC 28681

Exhibit A

emergency grievance

410 (8/89)

# NORTH CAROLINA DEPARTMENT OF CORRECTION
## DIVISION OF PRISONS
## ADMINISTRATIVE REMEDY PROCEDURE

1. Inmate Name: Dontez Samuel 2. Inmate No.: 0341512

3. Location: Red Rm 9 4. Date: 6-5-04

5. Grievance Statement: Alexander Correctional seg unit is cruel and unusual punishment, infringing the 8th Amend to the U.S. Constitution, which subjects me and prisoners to physiological mental deterioration. Medical and Mental health services to inmates are unavailable. Unqualified nurses such as R.N.s and LPN regularly perform medical tasks not licensed to do and perform professional duties beyond the scope permitted by law and prisoners are unable to declare medical emergencies, since prison officers interfere with a prisoner's request and incompetent nurses lack the ability to diagnose. On 3 June 2004 Samuel reportedly requested to (Sgt Bell) be seen by medical staff and declared numerous medical emergencies which were ignored and not tended to, relating to emotional distress and mental illnesses, abnormality heart beating, and lightheadedness. After not being allowed to be evaluated by medical, however Samuel make several attempts to be seen by a ...

6. What remedy would resolve your grievance?: Rectify this unconstitutional segregation and provide adequate treatment to Samuel

7. Inmate Signature: Dontez Samuel

Attached 2 sheets

OFFICIAL USE

8. Date received: 6/4/04 9. Sgt Hewitt
Receiving Officer Signature

10. ☐ This grievance is returned and can only be accepted when your current grievance completes step two.

11. Date delayed: __/__/__ 12. ________
Screening Officer Signature

13. The grievance is rejected for the following reason(s): (Enter Code) ______

A. State or Federal Court Decision
D. Action not yet taken
G. More than one incident
J. Beyond control of DOC

B. Parole Commission Decision
E. Exceeds 1 year time limit
H. ARP procedures not followed

C. Appeals disciplinary action
F. Remedy for another inmate
I. Violates Disciplinary No. 38

If grievance is rejected, # 13, # 14, # 15, and # 16 are completed by the Screening Officer, a photocopy of grievance is forwarded to Superintendent for review, and the original grievance is returned to inmate.

14. Rejection Justification: ________

15. Date rejected: __/__/__ 16. ________
Screening Officer Signature

17. Date accepted: 6/7/04 18. Kelly R. Inman
Screening Officer Signature

19. Grievance No. 4870-SEG-037-2004

Item #13, 15, or 17 to be completed within 3 calendar days of item #8
Distribution: White to point of final disposition, Blue for Unit record; Green to inmate.

Case 5:04-cv-00182-GCM Document 1 Filed 11/04/04 Page 110 of 141

exhibit A

2

mental health doctor. Which was denied. Since After Arriving at this facility And placed in seg. Since I have experience mental physcological trauma. Also, due to this segregation not obtaining an adequate mental or medical department to treat prisoners, the responsibility is left to untrained prison officials. Which result to a person not being provided the proper treatment. And oneself conditions becoming exacerbated. I've been on suicide watch for 3 days and at this present time. Since I have not seen no phsycotrist. prison officials have strip me naked for abnormal hrs. with only a blanket. And repeatedly I've inquired administration to please get me a mental health doctor. Whereas, prison official continue to tell me all of these stories about the mental doctor being unavailable therefore I'm blatantly being denied mental health treatment. The only medical staff that have visited me over a 3 day period is only a register nurses (name unknown) And these visit consist of a evaluation throu the glass door and vital signs, blood pressure checks etc conducted. And this visit only last for 20 second. 2. The dog collar experiment: Seg official are practicing and acting out the barbarous self-degradation tactics of similarity practices that the U.S. used over in Bagdad, Iraqi. When a prisoner goes to the shower prison officials place a pair of handcuffs on the inmate which has a dog leash attached to them. And places the handcuffs behind your back. With an officer holding a dog leash walking behind you, why you go forward. Resembling

exhibit A



the way a person walks a dog. And some officers taunt prisoners with the phrase "walk boy, walk boy". This expriencement which I've been there is the most degrading barbarous treatment I've endured in my whole life which is cruel and unusual punishment. Also, its definitely no penelogical justification for this exprienecementation. Which caused physcological mental trauma - protonally.3. As a result to these barbarous conditions of segregation Samuel have been on a hunger strike and suicide watch. Since this punishment is cruel and unusual punishment and administration know these practices they're practicing are unconstitutional. But as a result to administration difference and this facility deficient medical and mental health department. Samuel life is in impending danger. The Superintendent, and all prison officials including Unit Manger and medical staff that work this segregation know or should know that the conditions of this seg unit are cruel and unusual punishment. The above officials names at this time are unknown therefore I request that the grievance officer provided names

exhibit A

DC-410A (11/99)

# NORTH CAROLINA DEPARTMENT OF CORRECTION
# DIVISION OF PRISONS
# ADMINISTRATIVE REMEDY PROCEDURE

**Step One - Unit Response**

20. Grievance No.: 4870-SEG-037-2004 21. Inmate Name: Dontez Simuel

22. Inmate No.: 0371512

23. Grievance Response **(Item #25 to be completed within 15 calendar days of date in item #17):**

In response to your grievance:
Upon reviewing your grievance, and speaking with Ms. V. Carswell, MA (Staff Psychologist) it is noted that you were placed on suicide precautions on Thursday, June 3, 2004. Ms. Carswell states that DOC policy was followed during the time you were placed on precautions to include your placement on precautions, your assessment, and your follow up by mental health staff while on suicide precautions, and your removal from suicide precautions. Once you were removed from suicide precautions, you were followed up and assessed by mental health staff in accordance with DOC policy. It is also noted that all shower and exercise restraint procedures are in accordance with Alexander Correctional Institution policy.
No further action is necessary.

24. Date : ____________ 25. ____________ Superintendent Signature

26. (A)____ Agree with grievance response (B)____ Appeal to Step Two **(24-hour limit)**

27. Date: ____________ 28. ____________ Inmate Signature

**Step Two - Area/Complex/Institution Response**

29. Step two response **(Item #31 to be completed within 20 calendar days of date in item #27):**

Alexander Correctional Institution has a licensed medical doctor, mental health staff, and supporting staff as well. All available evidence indicates that you received all necessary treatment. No further action recommended.

30. Date : ____________ 31. ____________ Administrator Signature

32. (A)____ Agree with grievance response (B)____ Appeal to Secretary, DOC **(24-hour limit)**

33. Date: ____________ 34. ____________ Inmate Signature

**DISTRIBUTION**: White to point of final disposition; Blue for Unit Record; Green to Inmate

DC-410B (10/96)

exhibit A

# NORTH CAROLINA DEPARTMENT OF CORRECTION

STATE OF NORTH CAROLINA
MICHAEL F. EASLEY
GOVERNOR
FINESSE G. COUCH
EXECUTIVE DIRECTOR

INMATE GRIEVANCE RESOLUTION BOARD
P. O. Box 29540, Raleigh, NC 27626-0540

## Administrative Remedy Procedure

REV. CHARLES BULLOCK
CHAIRMAN
MEMBERS
LUCIEN CAPONE III
FRANCES L. DYER
JAMES C. JOHNSON
HILDAGENE REID

**Step Three**

**35. Inmate Name:** Simuel , Dontez

**36. GRB Grievance No.:** 146957

**37. Inmate #** 2057592 - 0341512

**38. Unit Grievance No.:** 4870037 2004

**39. Location:** Alexander CI 4870

**40. Date Received:** 7/9/04

**41. GRIEVANCE EXAMINER: Findings and Disposition Order:**

S=Dontez Simuel filed this grievance on June 5, 2004 at Alexander Correctional Institution. He claims he is not receiving adequate medical and mental health treatment.

Staff response indicated that this inmate is receiving all necessary treatment and has been followed up and assessed since being removed from suicide precaution.

This examiner has carefully reviewed this grievance and the staff response and found no evidence that staff has treated inmate negligently or inappropriately. Inmate has been given access to needed medical care; however, the prescribed treatment is solely within the discretion of the attending doctor. Therefore this grievance must be dismissed.

42. Date: 8/16/04

43. [signature]
*Inmate Grievance Examiner*

DISTRIBUTION: Originals (DC-410, DC-410A, & DC-410B) to location of final action.

cc: [ ] Unit Superintendent
[ ] Area Administrator
[ ] In-State Jail Command
[ ] Out-of-State Command
[ ] Private Substance Abuse Command



97-2573

# AFFIDAVIT

exhibit 8

State of N.C. )

County of Alexander )

I Malik Muti, being duly sworn, deposes and says:

1.) I am an adult over 18, and suffer from no mental or emotional illness and make this affidavit on my own free will and stating facts of which I have personal knowledge.

2.) I'm an incarcerated prisoner at Alexander Correctional Institution. At this present time I'm on long-term segregation status.

3.) While I've been on I-Con I've notice that medical services are regularly provided by lpn's and rn's. Which perform duties without the supervision of a physician.

4.) It's the regular practice for Alexander medical staff to conduct sick call screening at segregated prisoners cell with a officer present.

5.) Mental illness prisoner(s) have no access to recieving psychiatric treatment and care since prisoners with suicide tendencies or mental illness are left in their cells in regular segregation.

Name Malik Muti AKA Wayne Rankin-0354646
P.O. Box 909, 633 old Landfill Rd.
Taylorsville, N.C. 28681

Sworn to before me this ___ day of ______ 2004

______________________

Notary Public

Pursuant to 28 U.S.C. 1746, I declare under penalty of perjury that the foregoing is true and correct. [signature] -8-04

exhibit C

Declaration of

Anthony Dale Johnson

Anthony D. Johnson DeclAiRes under penAlty of preJury

1. I Am An Adult over 18 And Suffer from no mental or Emotional illness And make This AFFIDAVIT on my own free will And STATing Facts of which I have personal knowledge.

2. I Am A INCARCERATed prisoner At Alexander Correctional INSTITUTion At This persent Time I'm on Long Term SegRAgATion.

3. While I've Been on ICON I've notice That medical service ARE provided by Register Nurse. And on Emergence sick call IT Took The nurse and The Doctor (3) hour To come and See me ON 6/18/04.

4. And on Regular sick call I have A Sick Call in Now on The 23th of september 2004 And The nurse Keep Telling me That They will get with me every Time one of The nurse staff come back To ICON To pass out medication To inmate I Ask about sick call it The same line we see you later Today I'm steal waiting to see sick call now. They have sick call form But I have been INgored by This nurse staff At Alexander Correctional INSTITUTION.

exhibit C

5. I have Notice That when The Nurse Staff do Decide To do Sick call on Icon They will screen The inmate through The cell door Trap Thats where They do The vital Sign.

6. I have seen The doctor about Some health issue and The doctor Told me he was going To order me Some medicine but nurse Austin Told The doctor That I don't need it until I get off Icon.

7. Alexander personal official use A dog Leash Attached To A pair of handcuff with The inmate hand behind Their back To and from The Shower, on The out side of The Shower Their is no mat and our shower shoe are wet from The Shower we Just Took and our hands is handcuff be hind our back ain't no way The C/o's can catch you if you Slip and fall you will get seriously hurt because you can't break your fall incase you do Slip. And Also The c/os have The leash in one hand and The inmate bag in The other They Cant help if you fall either.

exh.bit C

8 If And inmate have Appointment he have to put on Shackle and his hands are Tied down To walk down Stairs and The steps have space between Them were The shackle Can get hook on the steps and The C/o's are behind The inmate ain't no way The c/o's Can Catch The inmate if The shackle get hook on The steps.

9 I have wrote grievance on These dirty Tray's and cup The Kitchen be sending on ucen were I'm housed at To eat out of dirty Tray's and cup and The c/o's don't want To get you another Tray's after you Show it To Them Sergeant Bank' did me Like That on 10-5-04 at Lunch Time.

I Declare under penalty of preJury
That The Foregoing is True And Correct

Anthony Dale Johnson
#0208616
August 25, 2004

State of N.C.
County of Alexander

Declaration of
Cameron Flood

I) Cameron Flood declares under penalty of perjury

1) I am an adult over the age of eighteen, and suffer from no mental or emotional illness. I am making this affidavit on my own free will. I am stating facts of wich I have personal knowledge

2) I am an inmate at (Alexander Correctional Inst.) I am currently on long term segregation.

3) I arrived at this prison on (Aug. 18th 04). I have had several problems with the medical staff. These problems I feel are a direct threat to my health, and well being. I have sent several request to see medical forms in due to a neck injury I have. The request are Taking an average of ten days To be seen. Once I was seen The exam was done through the small trap in my cell door. Ther is no way that a proper exam Can be done through a 8"X6" trap door. It took [illegible] 2 weeks for me to see

exhibit D

a doctour. The doctor ordered X-rays for my neck. The X-rays were lost, and had to be redone. It took over 3 weeks for this to happen. Once the X-rays were back I was informed that nothing could be done for me untill I get out of seg. I live in constant pain every day due to this. I feal like the lack of concern, the unprofessional practices, and the length of time taken to respond to medical requestes puts me in direct danger for my saftey, and health.

4) Each cell in the seg. unit has an emergency call button. When pushed a light goes off, and a buzzer sounds in the seg. controll booth. An officer is present at all times in the controll booth. This button is to be used in emergency situations, and a direct responce is supposed to be made. Ive had two times that Ive used this button due to what I felt was an emergency situation. I had no responce on either ocassion. I had to wait several hours for a guard to make a round. If it would have been a life threating situation I would [illegible] the officers [illegible] respond

to the call buttons, nor do they make rounds on the chair like they are supposed to do. This realy bothers me due to my medical problems. I feel that I am in grave danger if anything serious ever happens. This is a very serious safety risk not only for myself, but for every person housed on this seg. unit.

5) When going too, and from the shower we are cuffed behind our backs, and a leash is hooked to the cuffs. This is the exact type of leash used to guide a dog. This practice is not only very degrading, but is also very unsafe. The area arond the showers becames very wet, and slippery. In the event of a fall I would have no way to catch myself. This is a very unsafe practice on the prisons part.

Pursuant to 28 USC 1746 I declare under penalty of perjury that the foregoing is true, and correct.

Cameron Flood 050006
Cameron Flood 050006
10-8-04

State of N.C.
County of Alexander

Declaration of
THOMAS WAYNE BATTLE

I THOMAS WAYNE BATTLE declares under penalty of perjury.

1. I am an adult over 18 years old and suffer from no mental or emotional illness and make this Affidavit on my own free will and stating facts of which I have personal knowledge.

2. I am a incarcerated prisoner at Alexander Correctional Institution at this present time and I'm on long term Segregation.

3. On or About 8-21-2004 I had a rash to break out on my lower legs I filled out a sick call form, but about 2 weeks went by and nobody came to see me. So one of the nurses stop by my cell and told me to fill out another sick call form so I did. She also gave me some anti fungal cream to use. But the rash got a lot worser and begain to spread all over my body. So by this time about a month has gone by and nobody has came to see me. So I had to start kicking the door and rasing all kind of noises to get me staff here to get medical help for me.

cont →

CONT.- So about 2 DAYS AFTER THAT ON 9-21-04 A DR. Piland came to see me. He looked AT my legs and other PARTS OF my Body. he SAid that my legs where infected pretty BAD. so He put me on antibotics "Keflex" 500 mg. 3 Times A DAY FOR 14 DAYS plus gave me Some Antibotics "Hibiclens soap" it is surgical HAND SOAP. IT TOOK About 4 weeks to somewhat cleanedup. But I STILL HAVE some places on my Body that are not Healed AS OF YET. But my medical help ran out and no body has come to check me out yet AS OF this DAY 10-28-2004.

4). WHILE an Inmate is LOCKED up on long Term, or Admin or Displinary Seg. An Inmate is HAND cuffed HANDS Behind his BACK "Plus HAS A DOG leash put on him to be escorted to the Showers. But while an Inmate is excorted down STAIRS FOR Rec., or down the Hall For anything An Inmate Does not wear A Dog Leash why is THAT. IT is demeaning FOR A humanbeing to be submitted to this kind OF TURTURE. An Inmate should have RIGHTS Also!.

PURSUANT TO 28 U-SC 1746: I declare under penalty OF perjury THAT the Foregoing is True and correct

THOMAS WAYNE BATTLE #0023584
[signature] 10-28-2004

Exhibit F

ISSR152 (50) NORTH CAROLINA DEPARTMENT OF CORRECTION 06/15/04
OFFENSE AND DISCIPLINARY REPORT PAGE 1

A. INMATE NAME: SIMUEL, DONTEZ NCDOC#: 0371512
FACILITY: ALEXANDER C.I. #: 4870 DATE OF REPORT: 06/15/04
CRIME ( ) MISD. INMATE ACTIVITY AT CUSTODY LEVEL AT DATE OF OFFENSE
CLASS (X) FELON TIME OF OFFENSE: 9 TIME OF OFFENSE: 2 06/02/04
SSA (X)

OFFENSE CLASS & NUMBER I: C02 II: III:
SUMMARY : ON 6-2-2004, AT APPROXIMATELY 3:10 P.M., LT. ERIC DYE REPORTS THAT INMATE DONTEZ SIMUEL STATED "FUCK THAT, I'M A GROWN MAN, I DON'T GIVE A FUCK ABOUT SEGREGATION."
I CONCUR WITH INVESTIGATING OFFICER SGT. DOUGLAS WATKINS'S RECOMMENDATION FOR C02- PROFANE LANGUAGE.
INMATE SIMUEL WAIVED HIS 24 HRS. NOTICE AND PLED NOT GUILTY TO THE CHARGE OF C02.

---

I HEREBY WAIVE MY RIGHT TO 24 HOURS WRITTEN NOTICE BEFORE MEETING THE HEARING OFFICER.
INMATE'S SIGNATURE: ______________________ DATE: __________
IS STAFF ASSISTANCE REQUESTED?: N STAFF ASSIGNED: GRADY, YASMIN Y.
MY RIGHTS WITH REGARD TO THE DISCIPLINARY HEARING AND REVIEW HAVE BEEN EXPLAINED TO ME AND I HEREBY ACKNOWLEDGE RECEIPT OF THESE CHARGES.
INMATE'S SIGNATURE: ______________________ DATE: __________

---

B. SUPERINTENDENT'S DECISION:
OFFENSE: I: C02 II: III:
INMATE PLEA: NOT GUILTY

C. HEARING OFFICER'S DECISION:
OFFENSE: I: C02 II: III:
INMATE PLEA: NOT GUILTY
VERDICT: GUILTY

D. PUNISHMENT IMPOSED:
ACTIVATE SUSPENDED SENTENCE DATED: FOR ARTICLE(S)

---

| I. | II. | III. |
|---|---|---|
| OFFENSE CLASS& NO: C-02 | OFFENSE CLASS& NO: - | OFFENSE CLASS& NO: - |
| 20 DAYS SEGREGATION | DAYS SEGREGATION | DAYS SEGREGATION |
| SUSPEND MONTHS | SUSPEND MONTHS | SUSPEND MONTHS |
| 00 DAYS CRED TIME LOSS | DAYS CRED TIME LOSS | DAYS CRED TIME LOSS |
| SUSPEND 0 MONTHS | SUSPEND MONTHS | SUSPEND MONTHS |
| 30 HOURS EXTRA DUTY | HOURS EXTRA DUTY | HOURS EXTRA DUTY |
| SUSPEND MONTHS | SUSPEND MONTHS | SUSPEND MONTHS |
| SUSPENSION OF RECREATI | SUSPENSION OF | SUSPENSION OF |
| RADIO , | , | , |
| PRIVILEGES 060 DAS | PRIVILEGES DAS | PRIVILEGES DAS |
| SUSPEND MONTHS | SUSPEND MONTHS | SUSPEND MONTHS |
| DEMOTE TO: | DEMOTE TO: | DEMOTE TO: |
| SUSPEND MONTHS | SUSPEND MONTHS | SUSPEND MONTHS |
| 2 MONTHS DRAW LIMITED | MONTHS DRAW LIMITED | MONTHS DRAW LIMITED |
| SUSPEND MONTHS | SUSPEND MONTHS | SUSPEND MONTHS |

---

APPROVED BY: PMW05 - PENNELL, MATTHEW W. ON 06/14/04 AT 16:10 (UNIT)
JJM04 - JOHNSON, JAMES MITCH ON 06/15/04 AT 09:14 (DHO)

INMATE NAME: SIMUEL, DONTEZ NCDOC#: 0371512
OFFENSE DATE: 06/02/04 TIME: 15:10 LOCATION: ALEXANDER C.I.
HEARING DATE: 06/15/04 TIME: 09:14 LOCATION: ALEXANDER C.I.

SUMMARY OF ALL INFORMATION, EVIDENCE, OR STATEMENTS DEVELOPED AT THE HEARING RELATING TO GUILT OR INNOCENCE:

INMATE SIMUEL WAS ADVISED OF HIS RIGHTS AND A STAFF REPRESENTIVE WAS APPOINTED. THE STAFF REPRESENTATIVE WAS MS. YASMIN GRADY. MS GRADY WAS EXPLAINED THE DUTIES OF THE STAFF REPRESENTIVE BY THE DHO.

INMATE SIMUEL WAS GIVEN THE CHANCE TO PLEA GUILTY TO THE CHARGE AND HE CHOSE TO PLEA NOT GUILTY. THE DHO READ HIM THE INVESTIGATORS STATEMENT AND ALL STATEMENTS IN THE PACKAGE. HE HAD REQUESTED A WITNESS STATEMENT AND THIS WAS READ.

THE FACTS OF THE CASE ARE THAT INMATE SIMUEL WAS HEARD CURSING BY OFFICER EDWARD MAYBERRY WHILE ON HIS WAY TO SEG. AFTER BEING DISRUPTIVE UPON ARRIVAL AT THIS FACILITY. HE WAS ALSO HEARD CURSING BY SGT. EDGAR BARNETTE WHO INDICATED THAT INMATE SIMUEL WAS GIVING STAFF A HARD TIME AT THE RECEIVING AREA AND WHEN ASK BY LT DYE E IF THERE WAS GOING TO BE ANY PROBLEMS INMATE SIMUEL STATED "FUCK THAT I'M A GROWN MAN I DON'T GIVE A FUCK JUST TAKE ME TO SEG." LT DYE CONCURS WITH THE STATEMENT BY SGT. BARNETTE.

INMATE MARCUS MILLER STATED THAT NEITHER HE NOR TO HIS KNOWLEDGE DID INMATE SIMUEL CURSE.

INMATE SIMUEL QUESTIONED THAT FACT THAT RIGHTS HAD BEEN VIOLATED. HE STATED THAT HIS RIGHTS HAD BEEN VIOLATED BECAUSE OF TIME FRAMES. HE FELT THAT HE SHOULD HAVE BEEN READ HIS RIGHTS SOONER. THE DHO TRIED TO EXPLAIN TO THE INMATE THAT TIME FRAMES WERE NOT A RIGHTS VIOLATION. THE INMATE THEN BECAME LOUD AND HAD TO BE QUIETEN DOWN BY SECURITY STAFF. HE WAS CONTINUING TO STATED THAT HIS RIGHTS HAD BEEN VIOLATED. HE STATED THAT THE DHO WAS NOT GIVEN HIM A CHANCE TO TALK. THE DHO EXPLAINED TO HIM THAT HE WOULD BE ALLOWED TO EXPLAIN HIS CASE HOWEVER THAT THE TIME FRAMES WERE NOT VIOLATED AND THIS CASE WOULD NOT BE DISMISSED DUE TO TIME FRAMES. DURING THIS TIME HE DEMANDED THAT THE ASSISTANT WRITE DOWN WHAT WAS BEING SAID BY THE DHO. THE DHO AGAIN ASK THE INMATE TO GIVE HIS VERSION OF THE INCIDENT HE CONTINUED TO TALK ABOUT RIGHTS VIOLATIONS, HE DID NOT CONFIRM OR DENY ANY THING REGARDING THE INCIDENT.

THE DHO CALLED THE ASST. SUPT OF THE FACILITY TO DETER THE REASON THAT THE CASE HAD OCCURRED ON 06 02 04 AND HAD NOT BEEN REPORTED TO THE UNIT MANAGER UNTIL 06 07 04. HE INDICATED THAT THE UNIT MANAGER HAD BEEN OUT OF THE OFFICE AND THIS WAS THE REASON FOR THE DELAY IN REPORTING. BASED ON THE STATEMENTS BY STAFF AND THE REPORTING PARTY STATEMENT THE DHO HAS REASON TO BELIEVE THAT INMATE SIMUEL

NORTH CAROLINA DEPARTMENT OF CORRECTION
RECORD OF HEARING

2

ul l 6, + F



INMATE NAME: SIMUEL, DONTEZ
OFFENSE DATE: 06/02/04 TIME: 15:10
HEARING DATE: 06/15/04 TIME: 09:14

NCDOC#: 0371512
LOCATION: ALEXANDER C.I.
LOCATION: ALEXANDER C.I.

SUMMARY OF ALL INFORMATION, EVIDENCE, OR STATEMENTS DEVELOPED AT THE HEARING RELATING TO GUILT OR INNOCENCE:

IS GUILTY OF THE CHARGE. PUNISHMENT GIVEN TO INDICATE TO THE INMATE THAT HE SHOULD SHOW RESPECT TO STAFF. INMATE GIVEN HIS APPEAL RIGHTS BY THE DHO.

HEARING OFFICER DECISION:

| OFFENSE: | I. C02 GUILTY | II. | III. |
|---|---|---|---|

HEARING OFFICER: JJM04 - JOHNSON, JAMES MITCH
RECORDER: RPM04 - RASH, PAUL M.

INMATE SIGNATURE: ______________________ DATE: ____/____/____

exhibit F

ISSR107 (40)

JULY 01, 2004

SIMUEL, DONTEZ NCDOC# 0371512
ALEXANDER C.I. UNIT# 4870

RE: DISCIPLINARY OFFENSE C02 DATED 06/02/04 15:10

DEAR INMATE SIMUEL :
YOUR APPEAL TO THE DIRECTOR OF PRISONS REGARDING THE DISCIPLINARY ACTION(S) NOTED ABOVE HAS BEEN RECEIVED AND REVIEWED AS REQUESTED.

THE RESULTS OF THIS REVIEW REVEAL THAT PROPER PROCEDURES WERE FOLLOWED, THAT SUFFICIENT EVIDENCE WAS PRESENT TO REACH A FINDING OF GUILTY, AND THAT PUNISHMENTS WERE IN ACCORD WITH DIVISIONAL POLICY AND PROCEDURE.

YOUR APPEAL IS, THEREFORE, DENIED AND THE ACTIONS TAKEN IN THESE MATTERS ARE UPHELD.

SINCERELY,

PIMPONG, HATTIE B.
CHIEF DISCIPLINARY HEARING OFFICER

CC: BENNETT, JAMES B.
COMBINED RECORDS
FILES

exhibit C



A. INMATE NAME: SIMUEL, DONTEZ NCDOC#: 0371512
FACILITY: ALEXANDER C.I. #: 4870 DATE OF REPORT: 06/15/04
CRIME ( ) MISD. INMATE ACTIVITY AT CUSTODY LEVEL AT DATE OF OFFENSE
CLASS (X) FELON TIME OF OFFENSE: 1 TIME OF OFFENSE: 2 06/02/04
SSA (X)

OFFENSE CLASS & NUMBER I: B03 II: C03 III:
SUMMARY : ON 06/02/04 AT APPROXIMATELY 10:00 PM. SGT. LESLIE BELL REPORTS INMATE SIMUEL WAS KICKING HIS DOOR REPEATEDLY REFUSING ORDERS TO STOP KICKING THE DOOR. OIC WAS CALLED.
BASED ON THE RECOMMENDATIONS OF INVESTIGATING OFFICER SGT. WILLIAM HENDREN, INMATE SIMUEL SHOULD BE CHARGED WITH AN B03 AND C03. INMATE SIMUEL WAIVED HIS 24 HOURS AND PLEAD NOT GUILTY. REFER TO THE DHO.
MATT CLARK 06/10/04.

---

I HEREBY WAIVE MY RIGHT TO 24 HOURS WRITTEN NOTICE BEFORE MEETING THE HEARING OFFICER.
INMATE'S SIGNATURE: ____________________ DATE: __________
IS STAFF ASSISTANCE REQUESTED?: STAFF ASSIGNED: GRADY, YASMIN Y.
MY RIGHTS WITH REGARD TO THE DISCIPLINARY HEARING AND REVIEW HAVE BEEN EXPLAINED TO ME AND I HEREBY ACKNOWLEDGE RECEIPT OF THESE CHARGES.
INMATE'S SIGNATURE: ____________________ DATE: __________

---

B. SUPERINTENDENT'S DECISION:

| | | | |
|---|---|---|---|
| OFFENSE: | I: B03 | II: C03 | III: |
| INMATE PLEA: | NOT GUILTY | NOT GUILTY | |

C. HEARING OFFICER'S DECISION:

| | | | |
|---|---|---|---|
| OFFENSE: | I: B03 | II: C03 | III: |
| INMATE PLEA: | NOT GUILTY | NOT GUILTY | |
| VERDICT: | GUILTY | GUILTY | |

D. PUNISHMENT IMPOSED:
ACTIVATE SUSPENDED SENTENCE DATED: FOR ARTICLE(S)

---

| I. | II. | III. |
|---|---|---|
| OFFENSE CLASS& NO: B-03 | OFFENSE CLASS& NO: C-03 | OFFENSE CLASS& NO: - |
| 20 DAYS SEGREGATION | 10 DAYS SEGREGATION | DAYS SEGREGATION |
| SUSPEND MONTHS | SUSPEND MONTHS | SUSPEND MONTHS |
| 00 DAYS CRED TIME LOSS | 00 DAYS CRED TIME LOSS | DAYS CRED TIME LOSS |
| SUSPEND 0 MONTHS | SUSPEND 0 MONTHS | SUSPEND MONTHS |
| 40 HOURS EXTRA DUTY | 30 HOURS EXTRA DUTY | HOURS EXTRA DUTY |
| SUSPEND MONTHS | SUSPEND MONTHS | SUSPEND MONTHS |
| SUSPENSION OF VISITATI | SUSPENSION OF CANTEEN | SUSPENSION OF |
| TELEPHONE , | RADIO , | , |
| PRIVILEGES 120 DAS | PRIVILEGES 060 DAS | PRIVILEGES DAS |
| SUSPEND MONTHS | SUSPEND 6 MONTHS | SUSPEND MONTHS |
| DEMOTE TO: | DEMOTE TO: | DEMOTE TO: |
| SUSPEND MONTHS | SUSPEND MONTHS | SUSPEND MONTHS |
| 4 MONTHS DRAW LIMITED | 2 MONTHS DRAW LIMITED | MONTHS DRAW LIMITED |
| SUSPEND MONTHS | SUSPEND 6 MONTHS | SUSPEND MONTHS |

---

APPROVED BY: CBM01 - CLARK, BRIAN M. ON 06/10/04 AT 20:00 (UNIT)
JJM04 - JOHNSON, JAMES MITCH ON 06/15/04 AT 10:12 (DHO)

Exhibit C



NORTH CAROLINA DEPARTMENT OF CORRECTION
RECORD OF HEARING



INMATE NAME: SIMUEL, DONTEZ
OFFENSE DATE: 06/02/04 TIME: 22:00
HEARING DATE: 06/15/04 TIME: 10:12

NCDOC#: 0371512
LOCATION: ALEXANDER C.I.
LOCATION: ALEXANDER C.I.

SUMMARY OF ALL INFORMATION, EVIDENCE, OR STATEMENTS DEVELOPED AT THE HEARING RELATING TO GUILT OR INNOCENCE:

INMATE SIMUEL WAS ADVISED OF HIS RIGHTS AND A STAFF REPRESENTIVE WAS APPOINTED. THE STAFF REPRESENTATIVE WAS MS. YASMIN GRADY. MS GRADY WAS EXPLAINED HER DUTIES OF STAFF REPRESENTIVE BY THE DHO.
INMATE SIMUEL WAS GIVEN THE CHANCE TO PLEA GUILTY. THIS WAS A RE-INVESTIGATION TO GET INFORMATION REGARDING TIME OF INCIDENT. THE TIME OF INCIDENT WAS DIFFERENT ON THE REFERRING REPORT AND THAN THE INVESTIGATION. ALSO, TO OBTAIN INFORMATION REQUESTED BY THE INMATE REGARDING HIS MENTAL STATUS.

(1)

THE FACTS OF THE CASE ARE THAT INMATE SIMUEL WAS KICKING HIS CELL DOOR REPEATIVELY. THIS WAS REPORTED BY SGT. LES BELL. SGT BELL WENT TO THE CELL AND ORDERED INMATE SIMUEL TO STOP KICKING HIS CELL DOOR AND REFUSED AND CONTINUED TO KICK THE DOOR. WHEN ORDERED TO SUBMIT TO CUFFS INMATE SIMUEL REFUSED. HOWEVER HE HE SUBMITTED TO CUFFS WHEN LT CHARLES THRIFT ARRIVED AND ORDERED HIM TO SUBMIT. INMATE GABRIEL STALLING SUBMITTED A STATEMENT REGARDING THIS INCIDENT. HE INDICATED THAT HEARD AN OFFICER BRYANT COME WITH A DC160 AND TELL INMATE SIMUEL TO GO THOUGH HIS PROPERTY. HE WAS NOT SURE OF THE OTHER OFFICERS NAME HE THINKS IT WAS JOHNSON CALLED INAMTE SIMEUL A BOY. AFTER WORDS WERE EXCHANGED INMATE SIMUEL STATED LET ME SEE THE SGT AND STARTED BEATING ON THE DOOR.
A STATEMENT THAT WAS REQUESTED BY INMATE SIMUEL WAS OBTAINED FROM MS. VALERIE CARSWELL PSYCHOLOGIST II. SHE INDICATED THAT THE INMATE WAS PLACED ON SUCIDE PRECAUTIONS ON THURSDAY JUNE 3, @120AM. HE WAS FOLLOWED BY MENTAL HEALTH STAFF IN ACCORDANCE TO POLICY. HIS CURRENT MENTAL HEALTH ISSUES AND CURRENT MENTAL HEALTH STATUS DOES NOT IMPEDE HIM FROM FOLLOWING INSTITUTION RULES FROM A MENTAL HEALTH STAND POINT. SHE STATES THAT INMATE IS RESPONSIBLE FOR HIS ACTIONS AND HE CAN BE HELD ACCOUNTABLE. INMATE SIMUEL STATED THAT HE HAS MENTAL HEALTH PROBLEMS AND MENTIONED THE NAME OF INMATE WOLFE AND HIS COURT CASES REGARDING MENTAL HEALTH ISSUES. NO SPECIFIC CASE DOCKET NUMBER WAS MENTIONED BY INMATE SIMUEL. INMATE SIMUEL STATED IN WRITTEN STATEMENT AND VERBALLY THAT HE WAS IN AN EMOTIONAL DISORDER MENTALLY AT THE TIME OF THE INCIDENT AND WAS ON SUCIDE WATCH. HE STATED HE COULD NOT REMEMBER WHAT TRANSPIRED.
BASED ON THE STATEMENT OF REPORTING PARTY AND OTHER STAFF ALONG WITH THE INVESTIGATORS REPORT THE DHO HAS REASON TO BELIEVE THAT INMATE SIMUEL IS GUILTY. THE PUNISHMENT IS GIVEN TO DETER THIS INMATE FROM FUTURE BEHAVIOR OF THIS

exhibit C



NORTH CAROLINA DEPARTMENT OF CORRECTION
RECORD OF HEARING



INMATE NAME: SIMUEL, DONTEZ                NCDOC#: 0371512
OFFENSE DATE: 06/02/04   TIME: 22:00     LOCATION: ALEXANDER C.I.
HEARING DATE: 06/15/04   TIME: 10:12     LOCATION: ALEXANDER C.I.

SUMMARY OF ALL INFORMATION, EVIDENCE, OR STATEMENTS DEVELOPED AT THE HEARING RELATING TO GUILT OR INNOCENCE:

TYPE WHICH TAMPERS WITH THE DOORS OF THE SINGLE CELL AND COULD LEAD TO DAMAGE OF THE LOCKING DEVICES. ALSO, TO DETER THIS INMATE FROM DISOBEYING ORDERS GIVEN BY STAFF IN REGARDS TO BEING CUFFED AND OTHER ORDERS WHICH COULD LEAD TO SECURITY RISK AT THIS FACILITY.

CONSIDERED IN THE PUNISHMENT WAS THE FACT THAT THE LOCKING DEVICE WAS NOT BROKEN AND INMATE DID SUBMIT TO CUFFS WHEN THE LT ASK HIM TO DO SO.

INMATE SIMUEL GIVEN HIS APPEAL RIGHT BY THE DHO.

HEARING OFFICER DECISION:

| OFFENSE: | I. B03 | II. C03 | III. |
|---|---|---|---|
| | GUILTY | GUILTY | |

HEARING OFFICER: JJM04 - JOHNSON, JAMES MITCH
RECORDER: RPM04 - RASH, PAUL M.

INMATE SIGNATURE: ______________________    DATE: ____/____/____

(2)

Exhibit C

ISSR107 (40)

JULY 01, 2004

SIMUEL, DONTEZ NCDOC# 0371512
ALEXANDER C.I. UNIT# 4870

RE: DISCIPLINARY OFFENSE B03 DATED 06/02/04 22:00
DISCIPLINARY OFFENSE C03 DATED 06/02/04 22:00

DEAR INMATE SIMUEL :
YOUR APPEAL TO THE DIRECTOR OF PRISONS REGARDING THE DISCIPLINARY ACTION(S) NOTED ABOVE HAS BEEN RECEIVED AND REVIEWED AS REQUESTED.

THE RESULTS OF THIS REVIEW REVEAL THAT PROPER PROCEDURES WERE FOLLOWED, THAT SUFFICIENT EVIDENCE WAS PRESENT TO REACH A FINDING OF GUILTY, AND THAT PUNISHMENTS WERE IN ACCORD WITH DIVISIONAL POLICY AND PROCEDURE.

YOUR APPEAL IS, THEREFORE, DENIED AND THE ACTIONS TAKEN IN THESE MATTERS ARE UPHELD.

SINCERELY,

PIMPONG, HATTIE B.
CHIEF DISCIPLINARY HEARING OFFICER

CC: BENNETT, JAMES B.
COMBINED RECORDS
FILES

ex h.b.to H

ISSR152 (50) NORTH CAROLINA DEPARTMENT OF CORRECTION
OFFENSE AND DISCIPLINARY REPORT

06/15/04


A. INMATE NAME: SIMUEL, DONTEZ NCDOC#: 0371512
FACILITY: ALEXANDER C.I. #: 4870 DATE OF REPORT: 06/15/04
CRIME ( ) MISD. INMATE ACTIVITY AT CUSTODY LEVEL AT DATE OF OFFENSE
CLASS (X) FELON TIME OF OFFENSE: 1 TIME OF OFFENSE: 2 06/03/04
SSA (X)

OFFENSE CLASS & NUMBER I: C99 II: III:
SUMMARY : ON 06/03/04 AT APPROXIMATELY 12:40 AM. CORRECTIONAL SGT. LESLIE BELL REPORTS, INMATE SIMUEL STATED HE COULDN'T TAKE IT ANYMORE, I WANT TO DIE.
BASED ON THE RECOMMENDATIONS OF INVESTIGATOR SGT. WILLIAM HENDREN, INMATE SIMUEL SHOULD BE CHARGED WITH AN C99 REFERENCE C10. INMATE SIMUEL WAVIED HIS 24 HOURS AND PLEAD NOT GUILTY. REFER TO DHO.
MATT CLARK 06/10/04.

---

I HEREBY WAIVE MY RIGHT TO 24 HOURS WRITTEN NOTICE BEFORE MEETING THE HEARING OFFICER.
INMATE'S SIGNATURE: ____________________ DATE: __________
IS STAFF ASSISTANCE REQUESTED?: STAFF ASSIGNED: GRADY, YASMIN Y.
MY RIGHTS WITH REGARD TO THE DISCIPLINARY HEARING AND REVIEW HAVE BEEN EXPLAINED TO ME AND I HEREBY ACKNOWLEDGE RECEIPT OF THESE CHARGES.
INMATE'S SIGNATURE: ____________________ DATE: __________

---

B. SUPERINTENDENT'S DECISION:
OFFENSE: I: C99 II: III:
INMATE PLEA: NOT GUILTY

C. HEARING OFFICER'S DECISION:
OFFENSE: I: C99 II: III:
INMATE PLEA: NOT GUILTY
VERDICT: GUILTY

D. PUNISHMENT IMPOSED:
ACTIVATE SUSPENDED SENTENCE DATED: FOR ARTICLE(S)

---

| I. | II. | III. |
|---|---|---|
| OFFENSE CLASS& NO: C-99 | OFFENSE CLASS& NO: - | OFFENSE CLASS& NO: - |
| 20 DAYS SEGREGATION | DAYS SEGREGATION | DAYS SEGREGATION |
| SUSPEND 6 MONTHS | SUSPEND MONTHS | SUSPEND MONTHS |
| 0 DAYS CRED TIME LOSS | DAYS CRED TIME LOSS | DAYS CRED TIME LOSS |
| SUSPEND 0 MONTHS | SUSPEND MONTHS | SUSPEND MONTHS |
| 30 HOURS EXTRA DUTY | HOURS EXTRA DUTY | HOURS EXTRA DUTY |
| SUSPEND 6 MONTHS | SUSPEND MONTHS | SUSPEND MONTHS |
| SUSPENSION OF TELEPHON VISITATION, | SUSPENSION OF , | SUSPENSION OF , |
| PRIVILEGES 060 DAS | PRIVILEGES DAS | PRIVILEGES DAS |
| SUSPEND 6 MONTHS | SUSPEND MONTHS | SUSPEND MONTHS |
| DEMOTE TO: | DEMOTE TO: | DEMOTE TO: |
| SUSPEND MONTHS | SUSPEND MONTHS | SUSPEND MONTHS |
| 2 MONTHS DRAW LIMITED | MONTHS DRAW LIMITED | MONTHS DRAW LIMITED |
| SUSPEND 6 MONTHS | SUSPEND MONTHS | SUSPEND MONTHS |

---

APPROVED BY: CBM01 - CLARK, BRIAN M. ON 06/10/04 AT 00:40 (UNIT)
JJM04 - JOHNSON, JAMES MITCH ON 06/15/04 AT 11:28 (DHO)

NORTH CAROLINA DEPARTMENT OF CORRECTION
RECORD OF HEARING



INMATE NAME: SIMUEL, DONTEZ
OFFENSE DATE: 06/03/04 TIME: 00:40
HEARING DATE: 06/15/04 TIME: 11:28

NCDOC#: 0371512
LOCATION: ALEXANDER C.I.
LOCATION: ALEXANDER C.I.

SUMMARY OF ALL INFORMATION, EVIDENCE, OR STATEMENTS DEVELOPED AT THE HEARING RELATING TO GUILT OR INNOCENCE:

INMATE SIMUEL WAS ADVISED OF HIS RIGHTS AND A STAFF REPRESENTIVE WAS APPOINTED. THE STAFF REPRESENTATIVE WAS MS. YASMIN GRADY MS GRADY WAS EXPLAINED HER DUTIES BY THE DHO. INMATE SIMUEL WAS GIVEN A CHANCE TO PLEA GUILTY AND CHOSE TO PLEA NOT GUILTY. THIS IS A RE-INVESTIGATION TO OBTAIN ADDITIONAL INFORMATION.
THE INVESTIGATION AND ALL STATEMENTS WERE READ. T THE HEAR THE FACTS OF THE CASE ARE THAT INMATE SIMUEL WAS CAUSING A DISTRUBANCE AND SGT LES BELL ENTERED THE WING.
WHEN HE ENTERED THE WING INAMTE SIMUEL STATED I CAN'T TAKE THIS ANYMORE AND I WANT TO DIE. SGT BELL ASK HIM IF HE HE WANTED TO HARM HIMSELF AND HE SAID HE DID. THE OIC WAS NOTIFIED AND INMATE SIMUEL WAS PLACED ON SUICIDE WATCH. INMATE SIMUEL DID NOT DENY THAT HE STATED HE WANTED TO KILL HIMSELF. HE STATED THAT HE WAS NOT GETTING THE PROPER MENTAL HEALTH TREATMENT AND THE PRACTICES OF THE OFFICIALS AT THE FACILITY MADE HIM LOSE IT. HE STATED THAT HE WAS COMPELLED TO TELL AN OFFICER HE NEEDED HELP. HE STATED THAT WHAT THE SGT DID WAS AN ENTRAPMENT WITH A FALSE ALLEGATION. LT. THRIFT ESCORTED THIS INMATE TO A HOLDING CELL AND GAVE HIM A SECURITY BLANKET AFTER THE INMATE STATED HE WANTED TO HARM HIMSELF. MS. CARSWELL STAFF PSYCHOLOGIST II STATED THAT INMATE SIMUEL WAS PLACED ON SUICIDE PRECAUTIONS ON JUNE 3 2004 @120AM. SHE STATES THAT THE INMATES CURRENT MENTAL HEALTH STATUS DID NOT PREVENT HIM FOR BEING RESPONSIBLE FOR HIS ACTIONS.
BASED ON THE STATEMENTS FROM OFFICERS AND STAFF THE DHO HAS REASON TO BELIEVE THAT INAMTE SIMUEL WAS MAKING PLANS TO HARM HIMSELF. THE PUNISHMENT IS SUSPENDED DUE TO THE FACT THAT HE DID NOT ACTUALLY HARM HIMSELF BUT JUST SPOKE OF HARMING HIMSELF TO STAFF.
INMATE GIVEN HIS APPEAL RIGHTS BY THE DHO.

HEARING OFFICER DECISION:
OFFENSE: I. C99 GUILTY II. III.

HEARING OFFICER: JJM04 - JOHNSON, JAMES MITCH
RECORDER: SPJ15 - STEINBERG, PETER J.

INMATE SIGNATURE: [signature] DATE: 6/15/04

ISSR107 (40)

JULY 01, 2004

SIMUEL, DONTEZ NCDOC# 0371512
ALEXANDER C.I. UNIT# 4870

RE: DISCIPLINARY OFFENSE C99 DATED 06/03/04 00:40

DEAR INMATE SIMUEL :
YOUR APPEAL TO THE DIRECTOR OF PRISONS REGARDING THE DISCIPLINARY ACTION(S) NOTED ABOVE HAS BEEN RECEIVED AND REVIEWED AS REQUESTED.

THE RESULTS OF THIS REVIEW REVEAL THAT PROPER PROCEDURES WERE FOLLOWED, THAT SUFFICIENT EVIDENCE WAS PRESENT TO REACH A FINDING OF GUILTY, AND THAT PUNISHMENTS WERE IN ACCORD WITH DIVISIONAL POLICY AND PROCEDURE.

YOUR APPEAL IS, THEREFORE, DENIED AND THE ACTIONS TAKEN IN THESE MATTERS ARE UPHELD.

SINCERELY,

PIMPONG, HATTIE B.
CHIEF DISCIPLINARY HEARING OFFICER

CC: BENNETT, JAMES B.
COMBINED RECORDS
FILES

Exhibit I

ISSR152 (50)

NORTH CAROLINA DEPARTMENT OF CORRECTION
OFFENSE AND DISCIPLINARY REPORT

06/15/04
PAGE 1

A. INMATE NAME: SIMUEL, DONTEZ  NCDOC#: 0371512
FACILITY: ALEXANDER C.I.  #: 4870  DATE OF REPORT: 06/15/04
CRIME ( ) MISD.  INMATE ACTIVITY AT TIME OF OFFENSE: 1  CUSTODY LEVEL AT TIME OF OFFENSE: 2  DATE OF OFFENSE 06/04/04
CLASS (X) FELON
SSA (X)

OFFENSE CLASS & NUMBER  I: B03  II: C02  III:
SUMMARY : ON 06/09/04 AT APPROXIMATELY 11:20 AM ASSISTANT UNIT MANAGER MS. KELLY NIMAN REPORTS, INMATE SIMUEL WAS KICKING HIS DOOR DEMANDING TO SEE THE PSYCOLOGIST. INMATE WAS ORDERED NOT TO KICK THE DOOR, HE DID NOT COMPLY BY KICKING IT AGAIN. INMATE STATED, THIS INSTITUTION IS FUCKING BULLSHIT.

BASED ON THE RECOMMENDATION OF INVESTIGATIOR SGT. RONNIE HUNEYCUTT, INMATE DONTEZ SIMUEL SHOULD BE CHARGED WITH AN B03 AND A C02. INMATE SIMUEL WAIVED HIS 24 HOURS AND PLEAD NOT GUILTY. REFER TO THE DHO.
MATT CLARK 06/11/04

---

I HEREBY WAIVE MY RIGHT TO 24 HOURS WRITTEN NOTICE BEFORE MEETING THE HEARING OFFICER.
INMATE'S SIGNATURE: ______________________ DATE: __________
IS STAFF ASSISTANCE REQUESTED?: N  STAFF ASSIGNED: GRADY, YASMIN Y.
MY RIGHTS WITH REGARD TO THE DISCIPLINARY HEARING AND REVIEW HAVE BEEN EXPLAINED TO ME AND I HEREBY ACKNOWLEDGE RECEIPT OF THESE CHARGES.
INMATE'S SIGNATURE: ______________________ DATE: __________

---

B. SUPERINTENDENT'S DECISION:

| | | | |
|---|---|---|---|
| OFFENSE: | I: B03 | II: C02 | III: |
| INMATE PLEA: | NOT GUILTY | NOT GUILTY | |

C. HEARING OFFICER'S DECISION:

| | | | |
|---|---|---|---|
| OFFENSE: | I: B03 | II: C02 | III: |
| INMATE PLEA: | NOT GUILTY | NOT GUILTY | |
| VERDICT: | DISMISSED | GUILTY | |

D. PUNISHMENT IMPOSED:
ACTIVATE SUSPENDED SENTENCE DATED: 06/03/04  FOR ARTICLE(S) C99

---

| I. | II. | III. |
|---|---|---|
| OFFENSE CLASS& NO: B-03 | OFFENSE CLASS& NO: C-02 | OFFENSE CLASS& NO: - |
| 0 DAYS SEGREGATION | 20 DAYS SEGREGATION | DAYS SEGREGATION |
| SUSPEND MONTHS | SUSPEND MONTHS | SUSPEND MONTHS |
| 0 DAYS CRED TIME LOSS | 00 DAYS CRED TIME LOSS | DAYS CRED TIME LOSS |
| SUSPEND 0 MONTHS | SUSPEND 0 MONTHS | SUSPEND MONTHS |
| 0 HOURS EXTRA DUTY | 30 HOURS EXTRA DUTY | HOURS EXTRA DUTY |
| SUSPEND MONTHS | SUSPEND MONTHS | SUSPEND MONTHS |
| SUSPENSION OF , | SUSPENSION OF VISITATI RECREATION, | SUSPENSION OF , |
| PRIVILEGES DAS | PRIVILEGES 060 DAS | PRIVILEGES DAS |
| SUSPEND MONTHS | SUSPEND MONTHS | SUSPEND MONTHS |
| DEMOTE TO: | DEMOTE TO: | DEMOTE TO: |
| SUSPEND MONTHS | SUSPEND MONTHS | SUSPEND MONTHS |
| MONTHS DRAW LIMITED | 2 MONTHS DRAW LIMITED | MONTHS DRAW LIMITED |
| SUSPEND MONTHS | SUSPEND MONTHS | SUSPEND MONTHS |

---

evhibit I

ISSR154 (55) NORTH CAROLINA DEPARTMENT OF CORRECTION 06/15/04
RECORD OF HEARING PAGE 1

INMATE NAME: SIMUEL, DONTEZ NCDOC#: 0371512
OFFENSE DATE: 06/04/04 TIME: 11:20 LOCATION: ALEXANDER C.I.
HEARING DATE: 06/15/04 TIME: 12:58 LOCATION: ALEXANDER C.I.

SUMMARY OF ALL INFORMATION, EVIDENCE, OR STATEMENTS DEVELOPED AT THE HEARING RELATING TO GUILT OR INNOCENCE:

INMATE SIMUEL WAS ADVISED OF HIS RIGHTS AND A STAFF REPRESENTATIVE WAS APPOINTED. THE STAFF REPRESENTATIVE WAS MS. YASMIN GRADY. MS GRADY WAS EXPLAINED HER DUTIES AS STAFF REPRESENTATIVE BY THE DHO. INMATE SIMUEL WAS GIVEN A CHANCE TO PLEA GUILTY AND CHOSE TO PLEA NOT GUILTY TO THE CHARGES. THIS IS A RE-INVESTIGATION FOR ADDITIONAL INFORMATION. THE REFERRING AUTHORITY REPORT INDICATED THAT THE INCIDENT OCCURRED ON 06 09 04. HOWEVER, THE CHARGE DATE IS 06 04 04. THIS IS SEEN AS A TYPOGRAPICAL ERROR. THE ERROR WAS POINTED OUT TO THE INMATE AND HE STATED THAT HE UNDERSTOOD AND THE HEARING WAS CONTINUED. IT IS NOTED THAT THE CORRECT DATE AND TIME WAS ON THE FIRST INVESTIGATION CHARGING REPORT. THE FACTS OF THE CASE ARE THAT ON 06 04 04 ASST. UNIT MANAGER KELLY NIMAN WAS NOTIFIED OF INMATE SIMUEL KICKING HIS DOOR IN SINGLE. SHE WENT TO THE SINGLE CELL AND ASK THE INMATE TO CALM DOWN. WHEN SHE ASK HIM TO CALM DOWN AND TELL HER THE PROBLEM. HE STATED TO HER "I WANT SPEAK TO A PSHCHOLOGIST AND THIS IS BULL SHIT. THIS WHOLE INSTITUTION IS FUCKING BULL SHIT. HE TOLD HER HE WAS NOT CALMING DOWN FUCK YOU. THIS IS FUCKING BULLSHIT. INMATE SIMUEL DID NOT DENY CURSING MS NIMAN. HE STATED THAT HE WAS NOT RESPONSIBLE FOR HIS ACTIONS DUE TO MENTAL STATUS HE REQUESTED SEVERAL STATEMENTS FROM STAFF THAT WERE NOT PRESENT AT THE INCIDENT OR WHO COULD NOT BE IDENTIFIED DUE TO THE INMATE NOT GIVING A NAME. PSYCHOLOGIST II VALERIE CARSWELL DID WRITE A STATEMENT THAT INDICATES THIS INMATE FROM A MENTAL HEALTH STANDPOINT IS RESPONSIBLE FOR HIS ACTIONS AND HE CAN BE HELD ACCOUNTABLE. AFTER REVIEW OF ALL STATEMENTS IN THE PACKAGE AND SPEAKING WITH MS NIMAN THE B03 CHARGE IS DISMISSED. MS. NIMAN STATED THAT THE INMATE DID NOT KICK THE DOOR IN HER PRESENTS. BASED ON THE STATEMENTS BY MS NIMAN THE INMATE IS FOUND GUILTY OF THE C02 CHARGE FOR CURSING MS NIMAN. PUNISHMENT GIVEN TO DETER THIS INMATE FROM BEHAVIOR OF THIS TYPE WHICH SHOWS DISRSPECT TO STAFF. THE INMATES RECORD REGARDIN THIS TYPE OF VIOLATION WAS ALSO CONSIDERED.

HEARING OFFICER DECISION:

| OFFENSE: | I. B03 | II. C02 | III. |
|---|---|---|---|
| | DISMISSED | GUILTY | |

HEARING OFFICER: JJM04 - JOHNSON, JAMES MITCH
RECORDER: SPJ15 - STEINBERG, PETER J.

INMATE SIGNATURE: ____________________ DATE: ____/____/____

exhibit I

ISSR107 (40)

JULY 01, 2004

SIMUEL, DONTEZ NCDOC# 0371512
ALEXANDER C.I. UNIT# 4870

RE: DISCIPLINARY OFFENSE C02 DATED 06/04/04 11:20

DEAR INMATE SIMUEL :
YOUR APPEAL TO THE DIRECTOR OF PRISONS REGARDING THE DISCIPLINARY ACTION(S) NOTED ABOVE HAS BEEN RECEIVED AND REVIEWED AS REQUESTED.

THE RESULTS OF THIS REVIEW WERE SUFFICIENT TO TAKE THE FOLLOWING ACTIONS:

DISCIPLINARY OFFENSE C02 DATED 06/04/04 11:20 MODIFIED PUNISHMENT

YOUR APPEAL IS, THEREFORE, SUPPORTED IN THIS MANNER.

BY COPY OF THIS NOTICE, THE SUPERINTENDENT AND COMBINED RECORDS WILL BE INSTRUCTED TO UPDATE RELEVANT MATERIALS IN THEIR FILES.

SINCERELY,

PIMPONG, HATTIE B.
CHIEF DISCIPLINARY HEARING OFFICER

CC: BENNETT, JAMES B.
COMBINED RECORDS
FILES

Exhibit J

NORTH CAROLINA DEPARTMENT OF CORRECTION 06/15/04
ISSR152 (50) OFFENSE AND DISCIPLINARY REPORT PAGE 1

A. INMATE NAME: SIMUEL, DONTEZ NCDOC#: 0371512
FACILITY: ALEXANDER C.I. #: 4870 DATE OF REPORT: 06/15/04
CRIME ( ) MISD. INMATE ACTIVITY AT CUSTODY LEVEL AT DATE OF OFFENSE
CLASS (X) FELON TIME OF OFFENSE: 1 TIME OF OFFENSE: 2 06/07/04
SSA (X)

OFFENSE CLASS & NUMBER I: C02 II: C12 III:
SUMMARY : ON 06/07/04 AT APPROXIMATELY 10:18 PM OFFICER JEFFERY FOX REPORTS, INMATE SIMUEL STATING, FUCK THAT BITCH, IN THE MORNING WHEN I TALK TO THAT BITCH I'M GOING TO PISS IN HER MOTHER FUCKING FACE, REFERING TO PSYCHOLOGIST II VALERIE CARSWELL.
BASED ON THE RECOMMENDATION OF INVESTIGATOR SGT. WILLIAM HENDREN, INMATE SIMUEL SHOULD BE CHARGED WITH AN C02 AND C12 INMATE SIMUEL WAIVED HIS 24 HOURS AND PLEAD NOT GUILTY.
REFER TO THE DHO.
MATT CLARK 06/10/04.

---

I HEREBY WAIVE MY RIGHT TO 24 HOURS WRITTEN NOTICE BEFORE MEETING THE HEARING OFFICER.
INMATE'S SIGNATURE: ______________________ DATE: __________
IS STAFF ASSISTANCE REQUESTED?: STAFF ASSIGNED: GRADY, YASMIN Y.
MY RIGHTS WITH REGARD TO THE DISCIPLINARY HEARING AND REVIEW HAVE BEEN EXPLAINED TO ME AND I HEREBY ACKNOWLEDGE RECEIPT OF THESE CHARGES.
INMATE'S SIGNATURE: ______________________ DATE: __________

---

B. SUPERINTENDENT'S DECISION:

| | I | II | III |
|---|---|---|---|
| OFFENSE: | I: C02 | II: C12 | III: |
| INMATE PLEA: | NOT GUILTY | NOT GUILTY | |

C. HEARING OFFICER'S DECISION:

| | I | II | III |
|---|---|---|---|
| OFFENSE: | I: C02 | II: C12 | III: |
| INMATE PLEA: | NOT GUILTY | NOT GUILTY | |
| VERDICT: | GUILTY | GUILTY | |

D. PUNISHMENT IMPOSED:
ACTIVATE SUSPENDED SENTENCE DATED: 06/02/04 FOR ARTICLE(S) C03

---

| I. | II. | III. |
|---|---|---|
| OFFENSE CLASS& NO: C-02 | OFFENSE CLASS& NO: C-12 | OFFENSE CLASS& NO: - |
| 20 DAYS SEGREGATION | 20 DAYS SEGREGATION | DAYS SEGREGATION |
| SUSPEND MONTHS | SUSPEND MONTHS | SUSPEND MONTHS |
| 00 DAYS CRED TIME LOSS | 00 DAYS CRED TIME LOSS | DAYS CRED TIME LOSS |
| SUSPEND 0 MONTHS | SUSPEND 0 MONTHS | SUSPEND MONTHS |
| 30 HOURS EXTRA DUTY | 30 HOURS EXTRA DUTY | HOURS EXTRA DUTY |
| SUSPEND MONTHS | SUSPEND MONTHS | SUSPEND MONTHS |
| SUSPENSION OF TELEPHON | SUSPENSION OF VISITATI | SUSPENSION OF |
| CANTEEN , | RADIO , | , |
| PRIVILEGES 060 DAS | PRIVILEGES 060 DAS | PRIVILEGES DAS |
| SUSPEND MONTHS | SUSPEND MONTHS | SUSPEND MONTHS |
| DEMOTE TO: | DEMOTE TO: | DEMOTE TO: |
| SUSPEND MONTHS | SUSPEND MONTHS | SUSPEND MONTHS |
| 2 MONTHS DRAW LIMITED | 2 MONTHS DRAW LIMITED | MONTHS DRAW LIMITED |
| SUSPEND MONTHS | SUSPEND MONTHS | SUSPEND MONTHS |

---

INMATE NAME: SIMUEL, DONTEZ NCDOC#: 0371512
OFFENSE DATE: 06/07/04 TIME: 02:07 LOCATION: ALEXANDER C.I.
HEARING DATE: 06/15/04 TIME: 14:31 LOCATION: ALEXANDER C.I.

SUMMARY OF ALL INFORMATION, EVIDENCE, OR STATEMENTS DEVELOPED AT THE HEARING RELATING TO GUILT OR INNOCENCE:

INMATE SIMUEL WAS ADVISED OF HIS RIGHTS AND A STAFF REPRESENTIVE WAS APPOINTED. THE STAFF REPRESENTIVE WAS MS. YASMIN GRADY. MS. GRADY WAS EXPLIANED HER DUTIES BY THE DHO. INAMTE SIMUEL PLEAD NOT GUILTY TO ALL CHARGES. HE REQUESTED WITNESS STATEMENTS FROM PSYCHOLOGIST II WALERIE CARSWELL AND CAPT.TERESA JARDON. THE FACTS OF THE CASE ARE THAT OFFICER J.L. FOX WAS STANDING OUTSIDE OF INMATE SIMUELS CELL WHEN HE HEARD INMATE YELLING ABOUT THE PSYCHOLOGIST ORDERING HIS PROPERTY REMOVED. INMATE STATED FUCK THAT BITCH I AM GOING TO WORRY THEM AT NIGHT AND DAY. HE STATED THAT IN THE MORNING HE WAS GOING TO PISS IN HER MOTHERFUCKING FACE. MS. VALERIE CARSWELL PYSCHOLOGIS II INDICATED THAT INMATE SIMUEL WAS ON SUICIDE WATCH ON JUNE 3 2004. SHE STATED THAT HE HAD BEEN ASSESSED AND FROM A MENTAL HEALTH STAND POINT HE IS RESPONSIBLE FOR HIS ACTIONS. INMATE DOES NOT DENY HIS ACTIONS HOWEVER HE STATES THAT HE HAS MENTAL DISORDER AND CANNOT BE HELD RESPONSIBLE FOR HIS ACTIONS DUE TO HIS MENTAL STATE. CAPT. JARDON DID NOT WITNESS THIS INCIDENT. BASED ON THE REPORTING PARTY STATEMENT AND OTHER STATEMENTS SUBMITTED THE DHO HAS REASON TO BELIEVE THAT INMATE SIMUEL IS GUILTY AS CHARGED. PUNISHMENT IS GIVEN BASED ON THIS INMATES CONTINUED MISCONDUCT AND TO DETER FUTURE BEHAVIOR OF THIS TYPE IN REGARDS TO STAFF. INMATE WAS GIVEN HIS APPEAL RIGHTS BY THE DHO.

HEARING OFFICER DECISION:

| | | | |
|---|---|---|---|
| OFFENSE: | I. C02 | II. C12 | III. |
| | GUILTY | GUILTY | |

HEARING OFFICER: JJM04 - JOHNSON, JAMES MITCH
RECORDER: SPJ15 - STEINBERG, PETER J.

INMATE SIGNATURE: ______________________ DATE: ____/____/____

Exhibit J

ISSR107 (40)

JULY 01, 2004

SIMUEL, DONTEZ NCDOC# 0371512
ALEXANDER C.I. UNIT# 4870

RE: DISCIPLINARY OFFENSE C02 DATED 06/07/04 02:07
DISCIPLINARY OFFENSE C12 DATED 06/07/04 02:07

DEAR INMATE SIMUEL :
YOUR APPEAL TO THE DIRECTOR OF PRISONS REGARDING THE DISCIPLINARY ACTION(S) NOTED ABOVE HAS BEEN RECEIVED AND REVIEWED AS REQUESTED.

THE RESULTS OF THIS REVIEW WERE SUFFICIENT TO TAKE THE FOLLOWING ACTIONS:

DISCIPLINARY OFFENSE C02 DATED 06/07/04 02:07 MODIFIED PUNISHMENT
EXTRA DUTY = 30 HOURS

DISCIPLINARY OFFENSE C12 DATED 06/07/04 02:07 MODIFIED PUNISHMENT
SEGREGATION TIME = 20 DAYS
EXTRA DUTY = 30 HOURS

YOUR APPEAL IS, THEREFORE, SUPPORTED IN THIS MANNER.

BY COPY OF THIS NOTICE, THE SUPERINTENDENT AND COMBINED RECORDS WILL BE INSTRUCTED TO UPDATE RELEVANT MATERIALS IN THEIR FILES.

SINCERELY,

PIMPONG, HATTIE B.
CHIEF DISCIPLINARY HEARING OFFICER

CC: BENNETT, JAMES B.
COMBINED RECORDS
FILES

exhibit K

ISSR152 (50)

NORTH CAROLINA DEPARTMENT OF CORRECTION
OFFENSE AND DISCIPLINARY REPORT



A. INMATE NAME: SIMUEL, DONTEZ — NCDOC#: 0371512
FACILITY: ALEXANDER C.I. — #: 4870 — DATE OF REPORT: 06/22/04
CRIME ( ) MISD. — INMATE ACTIVITY AT TIME OF OFFENSE: 1 — CUSTODY LEVEL AT TIME OF OFFENSE: 2 — DATE OF OFFENSE 06/04/04
CLASS (X) FELON
SSA (X)

OFFENSE CLASS & NUMBER I: B03 II: C02 III: C12

SUMMARY : ON 06/04/04 AT APPROXIMATEL 8:45 PM. CORRECTIONAL OFFICER TYRONE BRYANT REPORTS, INMATE DONTEZ SIMUEL WAS KICKING HIS DOOR. HE WAS ORDERED TO STOP KICKING HIS DOOR WHICH HE DID NOT COMPLY WITH. INMATE SIMUEL STATED, WHAT THE FUCK ARE YOU GOING TO DO, FUCK YOU MOTHERFUCKERS, I WANT MY FUCKING LAW BOOKS. INMATE SIMUEL ALSO STATED WAIT TILL I'M ON THE YARD WITH YOU MOTHERFUCKERS AND I WILL BUST YOUR FUCKING HEADS OPEN, FUCK YOU BITCH.

BASED ON THE RECOMMENDATION OF INVESTIGATOR SGT. RUSSEL CHESTER, INMATE DONTEZ SIMUEL SHOULD BE CHARGED WITH AN B3, C12 AND C3. INMATE SIMUEL WAIVED HIS 24 HOURS AND PLEAD NOT GUILTY REFER TO THE DHO.
MATT CLARK 06/18/04.

---

I HEREBY WAIVE MY RIGHT TO 24 HOURS WRITTEN NOTICE BEFORE MEETING THE HEARING OFFICER.
INMATE'S SIGNATURE: ______________________ DATE: __________
IS STAFF ASSISTANCE REQUESTED?: N STAFF ASSIGNED:
MY RIGHTS WITH REGARD TO THE DISCIPLINARY HEARING AND REVIEW HAVE BEEN EXPLAINED TO ME AND I HEREBY ACKNOWLEDGE RECEIPT OF THESE CHARGES.
INMATE'S SIGNATURE: ______________________ DATE: __________

---

B. SUPERINTENDENT'S DECISION:

| | | | |
|---|---|---|---|
| OFFENSE: | I: B03 | II: C02 | III: C12 |
| INMATE PLEA: | NOT GUILTY | NOT GUILTY | NOT GUILTY |

C. HEARING OFFICER'S DECISION:

| | | | |
|---|---|---|---|
| OFFENSE: | I: B03 | II: C02 | III: C12 |
| INMATE PLEA: | NOT GUILTY | NOT GUILTY | NOT GUILTY |
| VERDICT: | DISMISSED | DISMISSED | DISMISSED |

D. PUNISHMENT IMPOSED:
ACTIVATE SUSPENDED SENTENCE DATED: FOR ARTICLE(S)

---

| I. | II. | III. |
|---|---|---|
| OFFENSE CLASS& NO: - | OFFENSE CLASS& NO: - | OFFENSE CLASS& NO: - |
| DAYS SEGREGATION | DAYS SEGREGATION | DAYS SEGREGATION |
| SUSPEND MONTHS | SUSPEND MONTHS | SUSPEND MONTHS |
| DAYS CRED TIME LOSS | DAYS CRED TIME LOSS | DAYS CRED TIME LOSS |
| SUSPEND MONTHS | SUSPEND MONTHS | SUSPEND MONTHS |
| HOURS EXTRA DUTY | HOURS EXTRA DUTY | HOURS EXTRA DUTY |
| SUSPEND MONTHS | SUSPEND MONTHS | SUSPEND MONTHS |
| SUSPENSION OF , | SUSPENSION OF , | SUSPENSION OF , |
| PRIVILEGES DAS | PRIVILEGES DAS | PRIVILEGES DAS |
| SUSPEND MONTHS | SUSPEND MONTHS | SUSPEND MONTHS |
| DEMOTE TO: | DEMOTE TO: | DEMOTE TO: |
| SUSPEND MONTHS | SUSPEND MONTHS | SUSPEND MONTHS |
| MONTHS DRAW LIMITED | MONTHS DRAW LIMITED | MONTHS DRAW LIMITED |