IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
5:04CV182-1-MU

DONTEZ LAMONT SIMUEL,       )
                             )
    Plaintiff,          )
                             )
    v.                  )    **O R D E R**
                             )
PAULA SMITH, et al.,         )
                             )
    Defendants.         )
_____)

**THIS MATTER** comes before the Court upon Defendants' Motion for Summary Judgment, filed September 7, 2005, and Plaintiff's Motion for a Partial Stay, filed October 19, 2005.

For the reasons provided herein, Defendants' Motion for Summary Judgment is granted and Plaintiff's Complaint is dismissed.

## **FACTUAL BACKGROUND**

Plaintiff, an inmate in the custody of the North Carolina Department of Corrections (DOC), filed the instant § 1983 action alleging that his constitutional rights were violated during his stay at Alexander Correctional Institution[1] from June 2, 2004, to January 19, 2005. More specifically, Plaintiff alleges that he suffered severe psychological injury from seeing other inmates and from himself being escorted on a "dog leash."[2] Plaintiff also alleges that during the intake process he was

---

[1] Alexander Correctional Institution houses inmates who are serving long sentences or convicted of violent crimes.

[2] The device in question is a commercially manufactured nylon tether. A nylon tether line of about 30 feet in length is attached to the handcuffs. (Weisner Aff. Ex. F).

placed for 4 ½ hours in a cell with no blanket to protect himself from the air conditioning. Plaintiff further alleges that staff psychologist Valerie Carswell did not adequately treat his mental illness and he makes generalized complaints about his medical care. Finally, Plaintiff alleges various irregularities in his disciplinary hearings. The Court will address each of these allegations below.

## LEGAL ANALYSIS

### I. DOG LEASH

Plaintiff alleges that he suffered serious psychological injury when he witnessed inmates being escorted to the shower by guards who were using a 30 foot nylon tether which attaches to their handcuffs and allows the guard to walk behind the inmate. More specifically, Plaintiff asserts in his Complaint that after he first witnessed another inmate being taken somewhere with one of these alleged "dog leashes" he entered a "delirium mental state" and started kicking his cell door and yelling for 45 minutes.[3] (Compl. ¶¶ 27, 32, 33). Plaintiff states that later that day he became suicidal as a result of these "dog leashes."[4] (Compl. ¶ 57). Plaintiff also alleges that the policy of using these tethers caused him to lose sleep and to have nightmares. (Compl. ¶ 220). Plaintiff does not allege that he suffered any physical injury as a result of these tethers.

"After incarceration, only the unnecessary and wanton infliction of pain constitutes . . . cruel and unusual punishment forbidden by the Eighth Amendment." Whitley v. Albers, 475 U.S. 312,

---

[3] Interestingly, Plaintiff also states that he started kicking the door because he had been at his new facility for 4 to 6 hours and he had not yet been provided with his personal property. (Compl. ¶ 34).

[4] Plaintiff also attributes his hunger strike to the mental state induced by the use of these tethers. Plaintiff's hunger strike, even as described by Plaintiff, appears much more to be a calculated action protesting his treatment rather than a result of any alleged mental illness. (Compl. ¶ 153)

2

319 (1986). To establish a violation of the Eighth Amendment based upon conditions of confinement an inmate must allege and prove (1) an objectively "sufficiently serious" deprivation or risk of serious harm and (2) that the prison officials knowing of the deprivation or risk acted consciously with deliberate indifference to his health and safety subjectively. See Wilson v. Seiter, 501 U.S. 294, 297-98. A condition of harm is sufficiently serious if it is incompatible with "the evolving standards of decency that mark the progress of a maturing society . . . or which involve the unnecessary or wanton infliction of pain." Estelle v. Gamble, 429 U.S. 97, 102-03 (1976). That is, a court must consider whether the correctional officers actions, taken contextually, were objectively harmful enough to offend contemporary standards of decency. See Hudson v. McMillan, 503 U.S. 1, 6 (1993). In evaluating an Eighth Amendment claim, a court must consider whether the force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm. Id. Mere discomfort is not actionable.

A review of the Plaintiff's allegations concerning the use of the tether[5] leads this Court to conclude that Plaintiff's constitutional rights were not violated. First, this Court does not find that the use of the nylon tethers in question in and of itself was so objectionable as to offend contemporary standards of decency.[6] This conclusion is buttressed by the security concerns[7] behind

---

[5] The Court notes that Plaintiff lacks standing to assert claims based upon actions taken against other inmates.

[6] This Court finds Plaintiff's reaction to the use of these tethers completely over the top. Plaintiff's assertion that merely witnessing an inmate being taken to the showers by this method caused him to go into a prolonged state of delirium, to repeatedly kick his cell door, and yell profanities is simply beyond belief. Moreover, this state appears to come and go. By his own admission, even in his alleged "delirium mental state" he was able to be aware that he had not yet received his legal property and this factored into his decision to start kicking the door. (Compl. ¶ 33,34). In addition, Plaintiff is able to write coherent grievances and even write this 355 paragraph Complaint despite his alleged severe mental illness. Finally, the Court notes that Plaintiff is

3

the decision to use these tethers. As set forth in Defendants' Motion for Summary Judgment, the tethers at issue are approximately 30 feet long and attach to the prisoner's handcuffs. The use of these tethers increases the distance between guard and inmate and therefore reduces the risk of an inmate attacking a guard. The tether is used to escort prisoners who are housed in segregation and are required to be in full restraints. (Weisner Aff. ¶ 8). Inmates do not enjoy a right to be free from all indignities. Indeed, the conclusion that the tethers do not violate the constitution is supported by the fact that numerous courts have even upheld routine strip searches of segregation inmates based upon security concerns. See e.g., Rickman v. Avanti, 854 F.2d 327, 328 (9th Cir.1988)(prison policy requiring prisoners in segregation unit to submit to strip searches when leaving their cells for recreation, medical treatment, visitation and use of law library was found constitutional); Goff v. Nix, 803 F.2d 358, 370-71 (8th Cir.1986), cert. denied, 484 U.S. 835 (1987)(visual body cavity search of segregation unit inmates before and after going to exercise area to prevent passage of contraband constitutional); Campbell v. Miller 787 F.2d 217, 228 (7th Cir1986), cert. denied, 479 U.S. 1019 (1986)(permitting visual body cavity searches of high security inmates being transported to law library).

## II. LACK OF BLANKET

Plaintiff alleges that he was placed, dressed in a short-sleeve shirt and pants, in a cell for 4 ½ hours with no blanket and exposed to air conditioning. The constitution does not mandate

---

ultimately able to control his behavior. (Weisner Aff. ¶ 6)(Plaintiff released from ICON status on January 19, 2005).

[7] Plaintiff asserts that these tethers have no purpose other than to humiliate inmates. A review of the policy behind the use of these tethers, however, confirms that they are used for security purposes with inmates who have proven themselves to be a danger to themselves or others and therefore require full restraints. (Def. Mot. Summ. J. ¶ 8).

comfortable prisons. See Wilson v. Seiter, 501 U.S. 294, 298 (1991). Plaintiff's allegation fails to state a claim under 42 U.S.C. § 1983.

## III. DENIAL OF ADEQUATE MEDICAL CARE

Plaintiff alleges that he did not receive adequate medical care for various conditions he experienced while incarcerated at Alexander Correctional Institution. More specifically, Plaintiff alleges that it was unconstitutional for nurse practitioners to examine him and prescribe treatment for his ailments such as dry scalp, constipation, skin fungus, a back ache, and a possible soy allergy.

To establish an Eighth Amendment violation based on inadequate medical care, an inmate must show that the defendant acted with "deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 104 (1976). Deliberate indifference is demonstrated by either an actual intent to cause harm, or reckless disregard of substantial risk of harm that is either known to the defendant or would be apparent to a reasonable person in defendant's position. Miltier v. Beorn, 896 F.2d 848, 851-52 (4th Cir. 1990). In either case, however, the indifference must be substantial: inadequate treatment due to negligence, inadvertence, or differences in judgment between an inmate and medical personnel does not rise to the level of a constitutional violation. See Daniels v. Williams, 474 U.S. 327 (1986).

As an initial matter, the only medical person named by Plaintiff as a defendant is Paula Smith, the Director of Health Services for the entire Division of Prisons. Supervisory liability under § 1983 may not be predicated only on the theory of respondeat superior. See Vinnedge v. Gibbs, 550 F.2d 926, 929 (4th Cir. 1977). Section 1983 requires a showing of personal fault on the part of a defendant either based on the defendant's personal conduct or another's conduct in execution of the

5

defendant's policies or customs.  See Fisher v. Washington Metropolitan Area Transit Author., 690 F.2d 1133, 1142-43 (4th Cir. 1982).

Plaintiff has not alleged any personal conduct whatsoever by Defendant Smith with regard to his medical care.  To the extent his Complaint can be read to allege that the policy of allowing nurses and physician's assistants to respond to an inmate's sick call requests is a policy of Defendant Smith's and that it violates the constitution such claim fails.   That is, an inmate is simply not entitled to see a doctor at every sick call.  Nurses and physician assistants routinely examine, diagnose, and prescribe medications outside of prison and such conduct clearly does not violate the constitutional rights of inmates.  Moreover, Plaintiff fails to establish that he had a serious physical medical need and his claim fails on that basis.

Plaintiff also alleges that the mental health care he received was constitutionally inadequate. The medical records attached to the affidavit of Defendant Carswell, the staff psychologist, reveal that  Defendant Carswell evaluated Plaintiff on three occasions in the five days following his placement on suicide precautions.  In addition, Defendant Carswell evaluated Plaintiff on June 28, 2004, and August 26, 2004.  Defendant Carswell states that she never detected in Plaintiff any type of diagnosable mental illness.  (Carswell Aff. ¶ 3).  Indeed, she concluded, after her evaluations that his threat to harm himself was manipulative rather then genuine.  Id.

As an initial matter the Court notes that Plaintiff has not established that he suffered from a  serious medical need.  That is, Plaintiff has not provided any proof other than his own self-serving assertions, that he was indeed severely mentally ill.[8]  As such he has failed to establish that he had

---

[8] Based upon Plaintiff's own Complaint, this Court finds his assertion that he was severely mentally ill unconvincing.

a serious medical need.

Moreover, even if one assumes that Plaintiff established this fact, Plaintiff fails to establish that Defendant Carswell was deliberately indifferent to his alleged serious medical needs. As set forth above, Defendant Carswell evaluated Plaintiff on a number of occasions. Plaintiff's disagreement with Defendant Carswell's treatment of him, without more, is not enough to establish that Defendant Carswell was deliberately indifferent to his medical needs. Estelle v. Gamble, 429 U.S. 97, 105-06 (1976). Moreover, Plaintiff does he state what precisely Defendant Carswell should have done to treat him but did not do. Significantly, Plaintiff was ultimately able to control his behavior and move from segregation. As such, this Court concludes that Defendant Carswell was not deliberately indifferent to Plaintiff's alleged serious medical needs.

## IV. DISCIPLINARY HEARING

Plaintiff also alleges that his due process rights were violated at his disciplinary hearings.

Even if taken as true, Plaintiff's allegations regarding his discipline claim do not rise to the level of a federal statutory or constitutional violation. In order to prevail on either a procedural or substantive due process claim, an inmate must first establish that he was deprived of "life, liberty, or property" by governmental action. See Plyler v. Moore, 100 F.3d 365 (4th Cir. 1996).

In the instant case, as a result of his disciplinary infractions, Plaintiff was placed in segregation and lost various privileges.[9] In Sandin v. Conner, 515 U.S. 472 (1995), the United

---

[9] It does not appear to the Court that Plaintiff lost good time credits as a result of his disciplinary conviction. However, if he did lose good time credits, his claim concerning his recent disciplinary convictions necessarily challenges the validity of his disciplinary convictions and his loss of good time credits and therefore his exclusive means under federal law for challenging such actions would be a petition for a writ of habeas corpus. See Edwards v. Balisok, 520 U.S. 641, 645-

7

States Supreme Court held that discipline in segregated confinement does not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest. Id. at 485-86 (segregated confinement typically does not constitute an atypical or significant hardship); Beverati v. Smith, 120 F.3d 500, 503 (4th Cir. 1997)(same); Kitchen v. Upshaw, 286 F.3d 179, 185-86 (4th Cir. 2002)(holding that denial of participation in work release does not constitute an atypical or significant hardship). Notably, Plaintiff does not assert that his intensive control confinement or loss of certain privileges imposed such an atypical hardship vis a vis ordinary prison life as to create a liberty interest in avoiding it. As such he has failed to establish any due process violations.

## V. SEGREGATION

Plaintiff alleges that his placement in segregation constituted cruel and unusual punishment in violation of the Eighth Amendment. It is well established law, however, that an inmate's placement in segregation is not per se cruel and unusual punishment. See In re: Long Term Admin. Segregation of Inmates, 174 F.3d 464, 471-72 (4th Cir.)(administrative segregation for three years not per se unconstitutional), cert. denied, 528 U.S. 874 (1999). Plaintiff has not alleged any facts concerning his stay in segregation that would support a contrary conclusion.

To the extent Plaintiff is complaining about his placement on ICON status, the Supreme Court recently ruled that Ohio's procedures – multilevel review, notice to the inmate, and an opportunity for rebuttal -- for placing inmates in its Supermax facility provided sufficient due

---

48 (1997)(claims for damages, declaratory relief, or retroactive injunctions based on loss of good-time credits and claims for restoration of good time credits may only be brought in habeas proceedings, as opposed to § 1983, if a finding in favor of the plaintiff would necessarily imply the invalidity of the underlying disciplinary conviction). Plaintiff does not allege that his disciplinary convictions have been overturned and therefore his claim against these Defendants would be dismissed.

process to protect inmates' liberty interests in avoiding assignment to the Supermax. See Wilkinson v. Austin, 125 S. Ct. 2384 (2005). The North Carolina Department of Correction's procedures for placing an inmate on ICON status are similar in essence to Ohio's and provide sufficient due process to protect inmates' liberty interests. (Weisner Aff. ¶ 4, Ex. B). These protections were in fact provided to Plaintiff (Weisner Aff. ¶ 6, Ex.C). As such, Plaintiff's placement on ICON status did not violate Plaintiff's constitutional rights.

## VI. MOTION FOR PARTIAL STAY

Plaintiff states that in order to fully defend his claims from summary judgment, he needs discovery and therefore he requests that the Court stay his case with regard to all but eh dog leash claim and his cold cell claim. After reviewing Plaintiff's requests the Court concludes that such information is not needed before issuing a ruling in Plaintiff's case and consequently his request for a partial stay is declined.

**IT IS THEREFORE ORDERED THAT:**

1. Plaintiff's Motion for a Partial Stay is **DENIED**;

2. Defendants' Motion for Summary Judgment is **GRANTED**; and

3. Plaintiff's Complaint is **DISMISSED**.

Signed: April 5, 2006

Graham C. Mullen
United States District Judge